JOHN STAKONIS *vs.* UNITED ADVERTISING CORPORATION ET AL.

Third Judicial District, Bridgeport, October Term, 1929.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued October 24th, 1929—decided January 6th, 1930.

*Frank S. Bergin,* for the appellants (defendants).

*Arthur B. O'Keefe,* with whom, on the brief, was *Daniel L. O'Neill,* for the appellee (plaintiff).

HAINES, J. Several of the reasons of appeal relate to desired corrections of the finding, but these have all been waived. The essential facts which appear in the finding and award are that the claimant was one of about fifty employees of the defendant; that it was the custom of the defendant to give an outing or picnic each year to its employees for the purpose of "promoting good feeling among the employees and providing a good time for all who attended." Not only the employees, but the officers of the defendant attended and took part in the outings. The defendant made all the arrangements and provided food and transportation for all who attended. The program of entertainment was in the hands of a committee of the employees. The business and affairs of the defendant were not a subject of discussion or reference on these outings. "The employees were not obliged to attend, and were not required to remain at the outing all day. Such of the employees as attended . . . were paid their usual wage for the day of the

outing, and those who did not attend . . . were not paid." The employees assembled at the office of the defendant on the morning of July 28th, 1928, at nine o'clock to attend the outing. The start was made at ten-thirty with two touring cars provided by the defendant and other automobiles owned by various employees which were used with the knowledge and consent of the defendant. In previous years, when fewer automobiles were owned by employees, the defendant provided more cars. The defendant saw to it that transportation was provided for all, though an employee could ride in any car as he might arrange. The foreman of the defendant, on the day before the outing, told the plaintiff, that "he was not to work the next day, but was to go on the outing," and that he would be paid. The plaintiff arrived at the place of employment at eight-thirty, and though he had been told of the place where the outing was to be, he did not know where it was. He had no means of transportation except as it was provided by the defendant. He was given transportation in the automobile of a fellow employee, sitting alone on the back seat, while the defendant's foreman rode on the front seat with the owner and driver of the car. All the machines started together in line, for a point on the Milford shore where the outing was to be held. In the car at the head of the line was the superintendent of the defendant, and the other cars were not expected to pass that car, but several did so including the car in which the plaintiff was riding. On the Milford turnpike this car was involved in an accident and the plaintiff sustained serious physical injuries. The fracture of the vertebrae resulted in complete paralysis from the waist down.

The appeal as now presented raises only the ques-

tion whether this injury arose out of and in the course of the employment.

The defendant predicates its argument upon our statement of the basis of the compensation law appearing in *Norton* v. *Barton's Bias Narrow Fabric Co.,* 106 Conn. 360, 365, 138 Atl. 139: "The social philosophy back of the law requires that the employer should be responsible for incapacity resulting from injury or disease within its scope, if the employment or the conditions incident to it are the efficient cause in the production of that incapacity, and that he should not be responsible, if that incapacity would have come about without the intervention of the employment or the conditions incident to it, or if they play only a minor or incidental part in producing it." The defendant's argument is that this outing was not a part of the plaintiff's employment or of the conditions incident to the employment, so as to make the defendant responsible. It appears, however, that the injury occurred while the plaintiff was under his regular pay for the day, and that he had been ordered by the defendant's foreman, who, we must assume, was authorized to give him orders, to make this trip. It is difficult to see why the injury did not occur in the course of the employment. The plaintiff may or may not have been willing to make this use of the day, but he went because he was told to go. If he had been told to work at his usual task that day it would have been his duty to do so. He was naturally required by his contract of employment, to do what the foreman ordered him to do, for this was a condition of his receiving his pay for the day. While it is true the finding says the employees were not "obliged" to go, it must be admitted that that term is ambiguous. Doubtless there was no physical compulsion, but he was obliged to go if he was to receive his pay. Ap-

parently the only compulsion which the defendant could exercise in such a situation, was to impose a penalty for a refusal to obey, and that penalty might be a discharge from his employment or a deprivation of pay. It is apparent that the former was not resorted to, but the latter certainly was. To that extent, then, the defendant obliged the plaintiff to go, whether he wished to or not. Moreover, this was not a novel or unusual event which took place that day. It was a regular feature of the defendant's business which took place each year, and everyone entered the defendant's employment with the understanding that this was one of the incidents which the defendant had annexed to the employment. It is not necessary to speculate as to the motive of the defendant in making this outing a feature of its business, beyond what is stated in the finding—that of promoting good feeling among the employees, for this was surely a well worth while object from the defendant's standpoint. The important fact is that the plaintiff went because he was so directed by his foreman.

Whatever may have been the motive of the defendant, it seems to be true, as was said in the case of *Saba* v. *Pioneer Contracting Co.*, 103 Conn. 559, 564, 131 Atl. 394, that the defendant employer had annexed the dangers involved in the transportation as a risk incident to the employment. The analogy lies in the fact that in both cases the transportation had been provided by the employer and each employee was expected to conform to the arrangement for transportation which had thus been made for him. The employer, in both cases, had annexed this hazard of transportation to the employment and the employee had no voice in it. In order to earn his wage, he must conform to the requirement. This plaintiff was under orders for that day and was paid for his time in com-

plying, exactly as on the day before when about his regular tasks.

An injury arises in the course of the employment when it takes place (a) within the period of the employment, (b) at a place where the employee may reasonably be, and (c) while he is reasonably fulfilling the duties of the employment or doing something incidental to it. *Ryerson* v. *Bounty Co.*, 107 Conn. 370, 372, 140 Atl. 728; *Whitney* v. *Hazard Lead Works*, 105 Conn. 512, 517, 136 Atl. 105; *Harivel* v. *Hall-Thompson Co.*, 98 Conn. 753, 755, 120 Atl. 603; *Larke* v. *Hancock Mut. Life Ins. Co.*, 90 Conn. 303, 308, 97 Atl. 320.

An injury may arise in the course of the employment without any essential causal relation between the employment and the injury. There must be a conjunction of the two requirements, "in the course of the employment" and "out of the employment" to permit compensation. The former relates to the time, place and circumstance of the accident, while the latter refers to the origin and cause of the accident.

If the employee is doing what his employment calls for, and doing it in the way he is expected by the employer to do it, then the injury arises in the course of the employment.

An injury arises in the course of the employment if it occurs while the employee is doing what one so employed may reasonably do within the time during which he is employed, and at a place where he may reasonably be during that time.

If an employee is obeying specific instructions of the employer, though outside the sphere of his original employment, he is still in the course of his employment. Not only so, but if he is doing something entirely outside his obligatory duty which he is merely permitted by his employer to do, but without specific

instructions, for their mutual convenience, he is still within the course of his employment. *Mann* v. *Glastonbury Knitting Co.,* 90 Conn. 116, 96 Atl. 368.

That this plaintiff's injury occurred within the period of his employment, can hardly be questioned. That he was injured in a place where he reasonably might be, is also certain. It may fairly be said also that, acting under orders of his employer, he was fulfilling one of the duties of his employment, or at least he was doing something which this defendant had annexed to the employment and made incidental to it. We conclude the plaintiff's accident arose in the course of the employment.

Whether the injury arose out of the employment, involves two considerations: (a) It must have occurred in the course of the employment, and this test we think is met. (b) It must be the result of a risk involved in the employment or incident to it or to the conditions under which it is to be performed. *Marchiatello* v. *Lynch Realty Co.,* 94 Conn. 260, 263, 108 Atl. 799. There can be no question of the existence of a causal connection between the injury and the employment or the conditions incident to it, if this outing can be considered either as part of the employment or as an incident of the employment. *Gonier* v. *Chase Companies, Inc.,* 97 Conn. 46, 49, 50, 115 Atl. 677.

No exact statement, applicable in all cases, can be made as to what is incidental to an employment. The term has been defined as something which happens as a chance or undesigned feature of something else; casual, hence not of prime concern; subordinate; collateral. If an employment annexes certain conditions or requirements to the employment, it is not for the workman to question whether it is in furtherance of the employer's business. "A laboring man ought not to be obliged to inquire as to the power of his general

manager to direct him to do different kinds of work, concerning which directions are given." 1 Honnold on Workmen's Compensation, p. 570. The employer had made this outing one of the features of its business. For reasons of its own, it desired all its employees to attend, and all others except its officers were excluded. It had become a fixed incident of the business. The situation required the employee to assume, from the fact that he was ordered to attend, and that it was a fixed custom, and for employees only, under the direction and at the expense of the employer, that it was in some way in furtherance of the interests of the employer, or at least that it had some relation to it, as indeed it did. Moreover, the causative danger to the employee in this case was peculiar to the particular employment, since it included only employees and subjected them to a risk to which they, as members of the general public, would not otherwise have been subjected.

Under the circumstances of this case, it cannot fairly be denied that the plaintiff's injury had its origin in a risk connected with his employment, and that it flowed from that risk as a natural sequence. *McNicol's Case*, 215 Mass. 497, 499, 102 N. E. 697.

We may well commend whatever benevolent purpose the employer had in instituting this outing as a feature of its business, but we cannot fail to note the distinction between a mere invitation to enjoy the hospitality of the employer, and a direct order to attend with the imposition of a penalty for the disobedience of that order. This is the distinction which seems to have been lost sight of in the argument and brief of counsel for the defendant. The cases cited in support of that argument, proceed upon the theory of a gratuity, something quite apart from orders or penalties for failure to comply. In those cases there

is no direct relation between the outing or other activity and the employment, and the former cannot reasonably be held to be an incident of the latter.

This is not the ordinary case of a gratuitous outing or picnic given to employees by an employer, but the facts of this case are unusual, and we agree with the conclusion of the trial court, that this injury arose in the course of the employment and resulted from a risk incident to the employment.

There is no error.

In this opinion the other judges concurred.