KATHERINE SMITH *vs.* THE SEAMLESS RUBBER
COMPANY ET AL.

Third Judicial District, Bridgeport, October Term, 1930.
WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued October 23d, 1929—decided April 30th, 1930.

*Thomas R. Robinson,* with whom, on the brief, was *Arthur B. O'Keefe,* for the appellant (plaintiff).

*Harry M. French,* with whom, on the brief, was *Daniel L. O'Neill,* for the appellees (defendants).

MALTBIE, J.   The plaintiff had for many years been employed in the city of New Haven by the defendant employer, hereinafter called the company.   In January, 1928, the city was threatened with an epidemic of smallpox.   The board of health recommended that its residents submit themselves to vaccination and very many did so.   The company posted a notice in its plant as follows:  "We naturally desire to assist the Board of Health in their efforts to prevent a smallpox epidemic in New Haven and vicinity.   Therefore, we are arranging so that you may be vaccinated without any charge to yourself at our hospital today and tomorrow.   In order to handle this matter without confusion, all those desiring to be vaccinated kindly give their name to the department foreman or clerk, who will make up the list for each department, and he will notify you at what time you are to come down to the factory hospital.   We take this opportunity to urge you to give this serious consideration and take advantage of the opportunity offered you."   The company employed a physician and two nurses who were present in the factory hospital three or four days vaccinating such employees as presented themselves, and who were also there one Sunday, vaccinating members of the families of employees. The facilities for vaccination were furnished by the company free of charge, but the matter was entirely optional with the individual employee and no penalty was attached to a failure to have it done.   The company has a record of seven hundred and forty persons being vaccinated at their plant during this period and

this did not include all the vaccinations performed, but not all of its employees were vaccinated. The policy of providing facilities for vaccination at their plants was general at the time in large manufacturing establishments throughout the city. At first the scratch method with a bandage was used at the company's factory, but later the puncture method was adopted. The physicians and nurses used the usual, necessary and proper care. On January 23d, 1928, the woman in charge of the department where the plaintiff worked announced that the doctor was present and any who wished could go to be vaccinated, adding that she herself had had it done to set a good example. The plaintiff thereupon presented herself and was vaccinated in the usual manner by the puncture method. As a result of the vaccination she contracted an infection of the blood stream, resulting in incapacity.

The commissioner upon these facts reached the conclusions that, in choosing to be vaccinated, the plaintiff was not fulfilling any duty of her employment or doing any act incidental to it, and that her incapacity was not the result of a risk involved in the employment or incident to it or to the conditions under which it was required to be performed. These conclusions the trial court sustained and the plaintiff has appealed. The only question for our determination is, were the conclusions reached by the commissioner the result of an incorrect application of legal principles or a violation of the plain rules of reason or logic. *Wilder* v. *Russell Library Co.*, 107 Conn. 56, 62, 139 Atl. 644.

At the time she was undergoing vaccination the plaintiff was not fulfilling any duties of her employment. But that would not of itself defeat her right to compensation. "Finally, the same right to compensation will follow if any injury arising from a risk of the business is suffered while the employee is doing some-

thing which, although quite outside of his obligatory duties, is permitted by his employer for their mutual convenience, such as eating his dinner on the premises, or any similar act to the performance of which the employer has consented." *Mann* v. *Glastonbury Knitting Co.,* 90 Conn. 116, 120, 96 Atl. 368. On the other hand, we point out in *Larke* v. *Hancock Mutual Life Ins. Co.,* 90 Conn. 303, 309, 97 Atl. 30, that "an injury which occurs in the course of the employment will ordinarily arise out of the employment; but not necessarily so, for the injury might occur out of an act or omission for the exclusive benefit of the employee, or of another than the master, while the employee is engaged in the course of his employment." So in *Vitas* v. *Grace Hospital Society,* 107 Conn. 512, 516, 141 Atl. 649, we say: "If the work of ironing these curtains was something which was done for her exclusive personal benefit, or it was a personal privilege extended to her by her employer and having no direct or incidental relation to her employment, the injury resulting from its exercise would not justify compensation under the Workmen's Compensation Act." And in *Ohmen* v. *Adams Brothers,* 109 Conn. 378, 385, 146 Atl. 825, we say: "While the plaintiff was proceeding from his home to vote by the permission of his employers he was serving his own purposes although doing this with his employers' express consent and after his day's pay had begun and could not recover compensation for an injury then suffered."

Where an employer merely permits an employee to perform a particular act, without direction or compulsion of any kind, the purpose and nature of the act becomes of great, often controlling significance in determining whether an injury suffered while performing it is compensable. If the act is one for the benefit of the employer or for the mutual benefit of both an injury arising out of it will usually be compensable; on

the other hand, if the act being performed is for the exclusive benefit of the employee so that it is a personal privilege or is one which the employer permits the employee to undertake for the benefit of some other person or for some cause apart from his own interests, an injury arising out of it will not be compensable.

If we turn to the instant case, we are struck by the fact that the commissioner has not found that, in undertaking the vaccination of its employees, the company was seeking to serve its own purposes. Nor do the facts that he has found point to that conclusion so clearly as to make it the only reasonable inference, so that we could draw it as a matter of law. The notice posted by the company stated the purpose to be assistance to the board of health in its effort to prevent an epidemic of smallpox, and we see no reason upon the record to question the good faith or truth of this statement; to thus turn their facilities for reaching a considerable portion of the population of the city to the service of the general good of the community was a laudable purpose and one which should not be discouraged by an imposition of a liability not within the fair scope of the law. That this was the purpose of the company is also indicated by its extension of the opportunity to secure vaccination to the families of employees, and by the fact that the matter was left wholly voluntary with the employees. On the other hand, nothing upon the record indicates the extent of the danger of an epidemic or how far it would be likely to affect the working conditions in the company's factory. We cannot therefore assume as a necessary inference from the situation disclosed by the record that the opportunity given to the employees of the company to secure vaccination was extended to them for its benefit rather than as a personal privilege, or a means

of serving the general good of the community. Lacking this fact the conclusions of the commissioner cannot be held to be violative of any rule of law, or unreasonable or illogical. They must therefore stand. This renders it unnecessary to consider other questions suggested by the record bearing upon the right of the plaintiff to recover compensation.

The case before us is very different from *Stakonis* v. *United Advertising Corporation*, 110 Conn. 384, 148 Atl. 334. In that case we say (p. 391): "We may well commend whatever benevolent purpose the employer had in instituting this outing as a feature of its business, but we cannot fail to note the distinction between a mere invitation to enjoy the hospitality of the employer, and a direct order to attend with the imposition of penalty for the disobedience of that order. This is the distinction which seems to have been lost sight of in the argument and brief of counsel for the defendant. The cases cited in support of that argument, proceed upon the theory of a gratuity, something quite apart from orders or penalties for failure to comply. In those cases there is no direct relation between the outing or other activity and the employment, and the former cannot reasonably be held to be an incident of the latter." Nor is this case analogous to that of *Mascika* v. *Connecticut Tool & Engineering Co.*, 109 Conn. 473, 147 Atl. 11, for in that case the injured employee was not engaged in doing anything for his own benefit or that of any third party, but, having arrived at his place of employment in advance of the time when work was to begin, he was simply awaiting the coming of that time in the yard of the employer under conditions for which the employer was responsible.

There is no error.

In this opinion HAINES, HINMAN and BANKS, Js., concurred.

WHEELER, C. J. (dissenting). The vaccination occurred within the period of plaintiff's employment in a part of the plant of the defendant to which she had been expressly permitted to go during her work-hours. If her injury occurred not only while these factors were present but also when there was present the factor that she was then reasonably fulfilling the duties of her employment, "or engaged in doing something incidental to it," under our law it would be said to "arise in the course of her employment." *Larke* v. *Hancock Mutual Life Ins. Co.*, 90 Conn. 303, 308, 97 Atl. 320. While she cannot be held to have been fulfilling the duties of her employment when in the factory hospital for the purpose of being vaccinated by the defendant's doctor and with vaccine and nurses provided by it, she must be held to have been then engaged in doing something incidental to her employment. The suggestion of the vaccination came by way of an invitation from the defendant and not from the plaintiff. It was not obligatory upon her to comply, yet it was most natural that one who had worked for the defendant many years should appreciate the effort and expense it was expending to have its employees vaccinated as well as the desire of her employer to aid the board of health and to join with other large manufacturers in giving their employees this opportunity of securing immunity from the smallpox.

It was also quite natural that these employees, in such large numbers, should rely upon the skill and safety of the means provided by the defendant for carrying on this work which was of such unquestioned service to its employees and to the public welfare. I have no disposition to minimize the welfare of the

defendant's employees, or that of the public, as important among the motives which impelled the defendant to this course; but it is equally apparent that these were not the only beneficiaries of the defendant's action. No doubt it was conscious, as I am, of the benefit to the operation of its business if smallpox could be kept out of its plant. The true situation will not be portrayed unless we say—Its course was for the mutual convenience, that is the mutual advantage or service of both employer and employee. This is the necessary and inescapable legal inference from the facts found.

The duty of providing opportunity to all of its employees, gratuitously, during their work-hours to be vaccinated which the defendant assumed, by the very fact of its assumption, was made an incident of the employment, primarily for the employee and the public welfare, but incidentally for the employer. "Finally," we say in *Mann* v. *Glastonbury Knitting Co.*, 90 Conn. 116, 120, 96 Atl. 368, "the same right to compensation will follow if an injury arising from a risk of the business is suffered while the employee is doing something which, although quite outside of his obligatory duty, is permitted by his employer for their mutual convenience, such as eating his dinner on the premises, or any similar act to the performance of which the employer has assented."

We reiterate the same idea in referring to an attack of angina pectoris in *Coffey* v. *Coffey Laundries, Inc.*, 108 Conn. 493, 496, 143 Atl. 880: "It could not reasonably be anticipated as involved in anything which his employment required of him or which was appropriate or incident thereto." It could not be reasonably held that the vaccination of its employees was not appropriate to defendant's business. If it was thus appropriate it became, when done, an incident of the employment. Modern business has put in practice many

innovations designed to protect the employee's safety and health, to conserve his energy and to add to his comfort and happiness in his work. It does not limit these to the employment; it goes outside of this and promotes his recreation and comfort during the period of his labor. The same broadening social spirit is manifest in the employer's quickened interest in the living conditions of its employees and in the financial support given by it to local institutions, organizations and associations which make for the care or betterment or reasonable recreation of its employees.

Suppose the employer furnished a gymnasium in its plant for the use of its employees in the noon-hour, or a recreation field for their use in the summer season during the period of their employment and the employee making use of these facilities is injured through the defective apparatus of the gymnasium, or the negligence of the employees of the employer in charge of the recreation field. In either case the employee when injured would be an invitee as well as an employee. Would the employer be permitted to refuse compensation to its employee injured by the defective apparatus or by the negligence of those in charge of this field? Is not the employer's liability to make compensation to the employee because he was injured while using the facilities which the employer had made incidental to his employment? How much closer than these instances is the contact of the employer to the injury caused the plaintiff through the vaccine injected into her blood stream and causing infection to set in, induced as it must have been by the defective vaccine or the careless sterilization of the facilities used, or of the person of the doctor or nurse touching them or the patient.

The plaintiff's active part in this transaction ended with her acceptance of her employer's invitation by

presenting herself at the hospital for vaccination. In all that occurred in effecting this vaccination she was a passive instrument in the hands of the defendant's agents. We have held that the employee who was injured while heating his lunch in a manner known to and not forbidden by the employer would be entitled to compensation because his act was an incident of the employment. The case of the plaintiff is an even plainer instance of an incident of her employment, where the injury arose through the acceptance of the employer's invitation to submit to an operation to be performed by its agents and with the facilities furnished by it.

The underlying principle in the recent case, *Mascika v. Connecticut Tool & Engineering Co.*, 109 Conn. 473, 147 Atl. 11, is decisive of this case. It was this: The yard in the rear of a factory was used in the noon-hour for play by boy employees of the defendant "with its knowledge and acquiescence." This was equivalent to an invitation of the employer to the boys to play in the yard. Mascika while in the yard where he had the right to be, and a passive actor, was injured by a stick thrown by one of the boys playing in the yard. We held: "His employer knew employees were liable to be in this yard and that the boy employees were in the habit of playing there but he did not order the play to cease or the employees to leave the yard. In *Marchiatello v. Lynch Realty Co.*, 94 Conn. 260, 108 Atl. 799, at page 264, we say: 'The sport and mischief of an employee resulting in injury to a fellow-employee cannot be held to be a risk of the employment unless the employer has knowledge . . . of the practice, and has failed to stop it.' The injury to the plaintiff was made likely, because of the conditions under which his employer's business was carried on 'and the result . . . should have been in the contemplation of the em-

ployer.' *Jacquemin* v. *Turner & Seymour Mfg. Co.,* *supra,* at pages 385, 386 [92 Conn. 382, 103 Atl. 115]."

The plaintiff was a passive actor when she suffered her injury, as was Masicka when injured by the thrown stick. In his case the injury occurred at the hands of a fellow-employee acting upon his own responsibility; in the plaintiff's case the injury was caused by the agents of the employer when doing that which it had directed them to do. The theory that the vaccination was not an incident of plaintiff's employment rests upon the assumption that the plaintiff's acceptance of the defendant's invitation was for her own benefit and not for that of her employer and consequently the subsequent injury to her did not arise in the course of her employment. That must mean that from the time she left her work to go to the factory hospital, upon receipt of notice from the foreman of her department, she was engaged upon her own affair and not upon something incidental to her employment. If on her way she was injured by a fall through a defect in the stair, or by the dropping of an elevator, or by a piece of the shafting falling as she walked through one of the rooms, or as she waited in the hospital, by a large piece of the ceiling dropping upon her, under the defendant's theory she could not recover compensation because at no time while on her way to the hospital was she serving her employer and engaged upon something incidental to her employment. This theory leads to conclusions which conflict with our decisions and with the principle upon which we determine what is incidental to an employment.

Our latest reiteration of our doctrine is found in *Stakonis* v. *United Advertising Corporation,* 110 Conn. 384, 389, 148 Atl. 334. "If an employee is obeying specific instructions of the employer, though outside the sphere of his original employment, he is still in the

course of his employment. Not only so, but if he is doing something entirely outside his obligatory duty which he is merely permitted by his employer to do, but without specific instructions, for their mutual convenience, he is still within the course of his employment."

We say in *Larke* v. *Hancock Mutual Life Ins. Co.,* 90 Conn. 303, 97 Atl. 320, at page 309: "An injury which occurs in the course of the employment will ordinarily arise out of the employment; but not necessarily so, for the injury might occur out of an act or omission for the exclusive benefit of the employee, or of another than the master, while the employee is engaged in the course of his employment."

Our case is one of the ordinary kind in this particular. The holding that the injury occurred while the employee was engaged in doing something incidental to her employment almost necessarily determines that the injury arose out of the employment since what was done by the doctor and the nurses was done in carrying out the duty for which the employer had engaged them. It fell directly within this description of this term: "If the nature of the employment, or the conditions under which it was pursued, or the exposure to injury it entails, or the doing of something incidental to the employment, was a proximate cause of the injury, it arises out of the employment." *Larke* v. *Hancock Mut. Life Ins. Co., supra,* at page 309; *Stakonis* v. *United Advertising Corporation, supra,* at page 389.

There was a causal connection between the employment of the plaintiff and her injury since it was the result of a risk incident to the employment. "To justify compensation the injury must be a natural and necessary incident or consequence of the employment, or the conditions under which the employee is required to carry on his work." *Coffey* v. *Coffey Laundries, Inc.,* 108 Conn. 493, 496, 143 Atl. 880; *Marchia-*

*tello* v. *Lynch Realty Co.,* 94 Conn. 260, 263, 108 Atl. 799.

In the case before us the plaintiff was vaccinated with her consent by the defendant and at its request, and the finding states, specifically, the connection between the employment and the infection. In my opinion the Superior Court should be directed to sustain the appeal of the claimant from the commissioner.