In the Matter of the Claim of ERNEST SANDERS, Respondent, against THE CHILDREN'S AID SOCIETY and Another, Appellants. STATE INDUSTRIAL BOARD, Respondent.*

Third Department, June 30, 1933.

*Ireland & Hendrickson [F. A. W. Ireland of counsel] for the appellants.*

*John J. Bennett, Jr., Attorney-General [Joseph A. McLaughlin, Isaac Frank and Roy Wiedersum, Assistant Attorneys-General, of counsel], for the respondents.*

HEFFERNAN, J. Claimant was employed as a handy man by the Children's Aid Society which conducts the Milbank Convalescent Home for Boys at Valhalla, N. Y.

On March 8, 1929, claimant filed a claim for compensation with the Department of Labor, alleging that he sustained an accident while working for his employer on October 20, 1928. He contended that while at work taking flower boxes from a porch the ladder on which he was standing broke and that he was struck on the right leg by a flower box and that as a result of this accident he received an injury resulting in the amputation of the leg on January 24, 1929. The employer and the insurance carrier resisted this claim and contended that there was no causal relation between the accident and the condition which necessitated the amputation of claimant's leg. Several hearings were held upon this claim, and because of the medi-

---

* Affd., 262 N. Y. 655.

cal testimony which was introduced the Board disallowed it on the ground that there was no causal relation.

The evidence taken on these hearings disclosed that there had been an epidemic in the vicinity of the employer's premises during the month of December, 1928. It was conceded that, at the request of the employer, all the employees, including claimant, were given a diphtheria antitoxin by Dr. Moody, who had contracted to treat the children of the home. The testimony shows that claimant suffered a reaction from the antitoxin, which caused him considerable pain in the right leg. He was admitted to Bellevue Hospital for treatment on January 17, 1929, and the clinical diagnosis showed that claimant was suffering from a thrombo angitis obliterans condition of the right leg. The medical testimony on behalf of the carrier established that claimant suffered a reaction from the serum injection which aggravated the condition of thrombo angitis obliterans and hastened gangrene which resulted in the amputation of the leg.

After the disallowance of his claim, claimant filed a second claim on November 26, 1930, alleging that on December 27, 1928, at the direction of the employer and at the employer's place of business, he was given an injection of antitoxin on account of an epidemic, as a result of which he suffered a reaction which required the amputation of the leg.

On June 25, 1932, the Board by a unanimous vote determined that it would be in the interest of justice to extend the time for filing the claim beyond one year from the date of the accident. It was within the discretion of the Board to do this. (Workmen's Comp. Law, § 28; *Orton* v. *Olds Motor Works*, 229 App. Div. 46; *Davis* v. *Rust*, 231 id. 336; *Callow* v. *Feinberg*, 232 id. 860.)

Hearings were held on the second claim, and at the close of the evidence the Board found that the reaction which claimant suffered as a result of the injection of antitoxin constituted an accidental injury within the meaning of the Workmen's Compensation Law, and that as a result of this accident a pre-existing condition of thrombo angitis obliterans was activated and hastened the setting up of gangrene in the leg which necessitated the amputation of that member. An award for the loss of the leg was thereupon made from which this appeal has been taken.

On this appeal appellants contend that the injury to claimant did not arise out of and in the course of his employment. The only question here is whether or not the injection of the antitoxin serum constituted an accidental injury within the meaning of the Workmen's Compensation Law. No case has been called to our attention in this State where the question has heretofore arisen nor have we

been able to find any. Research has disclosed but few cases in other jurisdictions involving a similar situation.

In *Neudeck* v. *Ford Motor Company* (249 Mich. 690) the claimant was ordered by the officials of the company to be vaccinated by the doctor employed by it to which he submitted. As an effect of the vaccination he incurred a streptococcus poisoning from which he subsequently died. The court held that the injury arose out of and in the course of the employment.

In *Texas Employers' Ins. Assn.* v. *Mitchell* ([Tex. Civ. App.] 27 S. W. [2d] 600) it appeared that during a smallpox epidemic the defendant ordered all of its employees to be vaccinated and this order was coupled with the ultimatum that unless they did so they could not work until after the epidemic was over. The claimant pursuant to this order was vaccinated and an infection followed which rendered her permanently disabled. In that case the court held that the injury was one sustained in the course of employment and awarded the claimant compensation.

In *Freedman* v. *Spicer Mfg. Corp.* (97 N. J. Law, 325) compensation was allowed the estate of an employee who died from a fractured skull caused by a fall during a fainting spell brought on as a result of an inoculation which he was invited and induced to undergo by the defendant during an influenza epidemic. The deceased was inoculated by the company physician, and the accident occurred on his return to his desk immediately after such inoculation. The case at bar is within the principles established by these authorities. In the instant case the injection of the antitoxin serum on December 27, 1928, resulting in the accidental injury, was not a voluntary act on the part of the claimant. The injection was made by the employer's physician on the employer's premises and was suffered by the claimant under the employer's direction. Under these circumstances it must be held that the injection was incident to claimant's employment and arose out of and in the course of such employment.

Appellants rely on *Jefferson Printing Co.* v. *Industrial Comm.* (312 Ill. 575; 144 N. E. 356) and *Krout* v. *Hudson Co.* (200 Mich. 287). These cases are readily distinguishable from the case at bar. In the *Jefferson* case the employee was vaccinated by the company's doctor in response to a notice sent out by the commissioner of public health of the city of Chicago, stating that smallpox was prevalent in and about Chicago, and advising the defendant to have its employees protected against that disease by vaccination. A few days after the vaccination erysipelas started at the point of the vaccination and subsequently the employee died from the effects thereof. The court held that vaccination was not an incident of

the employment and that there was nothing shown to indicate that the prevalence of erysipelas germs, or their liability to enter the bodies of the employees, was occasioned by anything in the nature or place of the employment, or was an added risk incidental to the employee's employment. From the evidence in the case it appears that some time elapsed between the vaccination and the infection and the court held there was a failure to show that the erysipelas was due to the vaccination or the faulty technique of the vaccinator. In denying compensation the court said that failure to trace the injury to a contributing proximate cause due to the employment or to show a quality of danger peculiar to the work and incidental to the business is fatal to a claim for compensation under the act.

In the *Krout* case it appears that claimant was employed as a fitter for the defendant company. On February 8, 1916, a general vaccination of the employees of the defendant was performed by a doctor, an official of the board of health of the city of Detroit, who acted in the premises at the request of the board of health and with the consent of the defendant. The claimant alleged that as a result of the vaccination she became afflicted with mastoiditis caused by an invasion of germs through the wound. The court set aside an award of compensation in her favor on the ground that she had failed to show any connection between her employment and the infection following vaccination. The court also said that if claimant's injury could be traced to the vaccination it arose, not out of her employment, but through the active agency of the Detroit board of health, which, for the benefit of the claimant as well as for the benefit of the general public, requested her to submit to the operation.

In *Smith* v. *Seamless Rubber Co.* (111 Conn. 365), not cited in either brief, it appears that in January, 1928, the city of New Haven was threatened with an epidemic of smallpox. The board of health recommended that its residents submit themselves to vaccination. Defendant provided facilities for vaccination of its employees but the matter was entirely optional with the individual employee and no penalty was attached to a failure to have it done. The plaintiff presented herself and was vaccinated in the usual manner. As a result of the vaccination she contracted an infection of the blood stream. The court sustained a finding by the Workmen's Compensation Commissioner that the injury sustained by plaintiff was not incidental to the employment or the result of a risk involved in the employment. The court held that the vaccination was performed for the exclusive benefit of the plaintiff and as a personal privilege and consequently was not compensable.

There is no evidence in the record that the health authorities

instructed the employer's physician to administer the antitoxin to claimant. The injection was ordered by the employer and was an incident to claimant's employment.

The award appealed from should be affirmed, with costs to the State Industrial Board.

HILL, P. J., RHODES and BLISS, JJ., concur; CRAPSER, J., dissents, with a memorandum.

CRAPSER, J. (dissenting). I dissent and vote to reverse the award and dismiss the claim on the ground that the accident did not arise out of and in the course of the claimant's employment. There is no evidence in the record that the claimant was compelled to take the injection of antitoxin, he did it voluntarily, and there is no proof in the record that the doctor gave the antitoxin at the request or under the employ of the employer.

The giving of the antitoxin was not itself an incident of the employment. He was not compelled to take it in order to hold his job and, therefore, the accident did not arise out of and in the course of his employment.

Award affirmed, with costs to the State Industrial Board.