82 N.J. Super. 222 (1964)
197 A.2d 390
JOSEPH RICCIARDI, PETITIONER-APPELLANT AND CROSS-RESPONDENT,
v.
DAMAR PRODUCTS COMPANY, RESPONDENT-RESPONDENT AND CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 30, 1963.
Decided February 4, 1964.
*224 Before Judges GAULKIN, LEWIS and LABRECQUE.
Mr. Norman Peterkin argued the cause for petitioner-appellant and cross-respondent (Messrs. Friedman & D'Alessandro, attorneys).
Mr. Herman D. Michels argued the cause for respondent and cross-appellant (Messrs. Toner, Crowley, Woelper & Vanderbilt, attorneys; Mr. Marshall Crowley and Mr. Michels, of counsel; Mrs. Andrea C. Balliette, on the brief).
The opinion of the court was delivered by GAULKIN, S.J.A.D.
Petitioner's wife, Janet Ann Ricciardi, was killed in an automobile accident while returning from a company picnic. Petitioner's petition for workmen's compensation was resisted by the employer on the grounds that the accident was not compensable and, in any event, petitioner was not a dependent. The Division awarded compensation. The County Court reversed, holding that the accident was compensable but that petitioner was not a dependent. Petitioner appeals, and the employer cross-appeals from that portion of the judgment of the County Court which held the accident to be compensable.
We hold that the accident was not compensable and that, even if it were, petitioner did not establish dependency.

I.
It is agreed that at the present time New Jersey adheres to the rule that ordinarily an employee may not recover compensation for injuries sustained while going to or coming from his regular place of work. Only the Legislature or the Supreme Court can change that rule. Until it is changed, we are bound by it. So long as New Jersey adheres to that rule, we cannot see how compensation can be awarded to an employee who is injured on his way to or from a picnic, unless the picnic is one arranged by the employer in such a fashion that attendance at it by the employee is in the nature of a *225 "special errand." Stout v. Sterling Aluminum Products Co., 213 S.W.2d 244 (Mo. Ct. App. 1948); F. Becker Asphaltum Roofing Co. v. Industrial Commission, 333 Ill. 340, 164 N.E. 668 (Sup. Ct. 1929); Miller v. Keystone Appliances, 133 Pa. Super. 354, 2 A.2d 508 (Super. Ct. 1938). Cf. Lawrence v. American Mutual Liability Ins. Co., 165 A.2d 735 (R.I. Sup. Ct. 1960); Stakonis v. United Advertising Co., 110 Conn. 384, 148 A. 334 (Sup. Ct. of Err. 1930).
In the case at bar we find that the employer's participation in the arrangements for the picnic were not sufficient to make attendance thereat a "special errand." There was no direction or request by the employer that the employees attend (as there was in Stakonis and Miller, supra), no financial or other compulsion upon the employees to attend, and no suggestion from management that it would be displeased by nonattendance. Indeed, a large proportion of the workers and even of the managerial staff did not attend. The picnic was on Saturday, a non-working day, the employees received no pay for the day, and no record of attendance was made.
The mere fact that the employer might have benefited from the picnic because of improved morale is not sufficient to justify compensation for injuries sustained while going to or coming from the picnic. The employer benefits from the employee's coming to the regular place of business to work, yet an injury suffered while coming to work is not compensable. If a worker may not recover compensation for injuries sustained while going to his regular place of work, which he is obliged to attend, it is difficult to see how compensation can be awarded to one who is injured on his way to or from a picnic or other entertainment or facility provided by the employer, off the factory grounds, from which the employee is free to stay away without financial loss or employer displeasure.
The mere fact that the employer pays for the picnic does not make the going-or-coming injury compensable. Industry today provides many off-the-premises entertainments and facilities for its workers  libraries, reading rooms, hospitals, *226 clinics, vacation resorts, recreation halls, theatres, bowling alleys, etc. When the workers are free to attend or refrain from attending these facilities and entertainments as they see fit, we conceive that injuries sustained while going to or coming from such places are not compensable.

II.
The petitioner contends that he was partially dependent on his wife. He testified that he earned $4,700 per year at the time of her death. She earned $23 or $24 per week, out of which she contributed approximately $18 per week towards household expenses. They had no children. They lived with petitioner's mother, to whom they paid $20 a week for rent. Decedent maintained a separate bank account which contained a balance of $152 shortly before her death, from which, a day or two before the accident, she withdrew $150 "to buy something for the house."
These facts do not establish that petitioner was a dependent, but rather that petitioner supported his wife with the aid of her contribution. It certainly required more than $18 per week to feed, house, clothe, maintain and entertain the decedent, and she obviously derived more than $18 per week benefit out of the common fund.
Under N.J.S.A. 34:15-13 the burden is upon petitioner to establish that he was wholly or partially dependent upon his wife at the time of her death. A dependent under the act has been defined as "one who is sustained by another or relies for support upon the aid of another," Wilken v. Shein's Express Co., 131 N.J.L. 450 (Sup. Ct. 1944); Catelli v. Bayonne Associates, Inc., 3 N.J. Super. 122 (App. Div. 1949); Rodesky v. Paterson, 19 N.J. Misc. 35, 17 A.2d 49 (Dept. Labor 1940); Gladstone v. Trenton Lehigh Coal Co., 3 N.J. Misc. 27 (Dept. Labor 1924); cf. Morrow v. Meteor Air Transport, Inc., 14 N.J. Super. 176, 179 (App. Div. 1951), even though "A showing of actual dependency does not require proof that, without decedent's contributions, claimant would have lacked the necessaries of life. The test *227 is whether his contributions were relied upon by the claimant to maintain the claimant's accustomed mode of living." 2 Larson, Workmen's Compensation Law, § 63.11 (1961). See also Carianni v. Schwenker, 38 N.J. Super. 350, 361-362 (App. Div. 1955); Havey v. Erie Railroad Co., 88 N.J.L. 684 (E. & A. 1915); Denis v. Scandanavian Belting Co., 5 N.J. Misc. 445 (Dept. Labor 1927); 9 Schneider, Workmen's Compensation Law (3d ed. 1950), § 1913. Cf. Wartell v. McGarrity, 20 N.J. Misc. 497, 29 A.2d 408 (Dept. Labor 1942); Fey v. Essex County, 23 N.J. Misc. 80, 41 A.2d 215 (Dept. Labor 1945).
Under these standards, petitioner was not a dependent.
The judgment of the County Court dismissing the petition is affirmed.
LEWIS, J.A.D. (concurring in result).
I agree that petitioner did not establish dependency, and for that reason he is not entitled to workmen's compensation benefits. The majority opinion, however, holds that decedent's fatal accident was not compensable. My analysis of the evidence and applicable law leads me to the opposite conclusion. Before discussing the legal issues, a degree of factual particularization is essential.
Respondent Damar, a closely-held family corporation, was one of three companies under the same management operating a mail-order business. Following a successful Christmas party given by Damar for the employees of its three branches, the company agreed to sponsor, in the form of a picnic, a similar social assembly during the summer. The picnic idea originated with Dolores Smaldone, an employee, and Morris Katz, president of the employees' union. Their suggestion was favorably received by the company, as indicated by Donald Hass, its vice-president and general manager, who testified, "We had a very successful Christmas party in 1959, which made the people and the management of the Company so pleased that we wanted to continue on an entertainment basis in some form or another, twice a year." Hass proposed *228 that the picnic affair be held at the Cider Mill Inn on Vaux Hall Road, Union, N.J., and he advised Smaldone and Katz to "get a committee together and let's work out the arrangements." Hass said that he would discuss the matter with the company's treasurer "as far as the payment of the picnic is concerned."
Smaldone became chairman of the committee, which was composed of regular employees, none of whom held a managerial or supervisory position with the company. The committee members, during employment hours, prearranged the details for the outing that was held on Saturday afternoon, July 2, 1960. They solicited the attendance of the employees, posted notices on the company's bulletin boards and distributed mimeographed invitations. Although acceptance was voluntary, and the employer did not issue orders or directives to the employees, they were personally contacted and requested to attend. The manner of invitation was described by an employee, Mamie Losey:
"THE JUDGE: Did she [Dolores Smaldone] come personally to you and ask you to attend the picnic?
THE WITNESS: Yes, because they had to have a list of names.

* * * * * * * *
THE JUDGE: What did she say in connection with Mr. Margolese [president of the company]?
THE WITNESS: She said she would like to have as many people there as she could so that when Mr. Margolese came that he would feel that it was a success."
The witness also explained the transportation arrangements  "if you wanted a ride, you could ride with the employees. They were going to be in front of the plant at 12:30 that day."
On this subject Mr. Hass, in his testimony on behalf of management, when questioned as to whether transportation was offered to the employees said:
"A. There were two cars. Mine and Mr. Francis Marguiles, also a brother; both of us were at the plant on Newark Avenue, Elizabeth, at noontime, I think, approximately, and we told anybody that wanted *229 to go to the picnic and lived anywheres where it would be easier to come to the plant than it would to go directly to the picnic, we would be at the plant around noon time and we would take them there.
Q. How about returning at the end of the afternoon? A. Same thing. We would go back to the plant. There are only two of us. Each of us had a station wagon."
No compensation was paid for attendance, and no penalties were imposed for absence. No charges were assessed against the employees, but their invited relatives and guests were each required to pay $7.50. The expenses were underwritten by the company, which ultimately paid the sum of $800, representing 98% of the total cost (approximately 5% of its weekly payroll), and the balance of 2% was paid by the employees' union.
At the outing, short messages of welcome were delivered by Hass on behalf of the employer and by Dick Weber, national secretary of the United Independent Unions of America, for the local union. The president of the company presented $25 savings bonds to six or seven employees for perfect work attendance. Damar's products were awarded as prizes to the winners of the ball games and dancing contests.
Food and beverages were freely available during the day, and a buffet dinner was served at 6 P.M. Hard liquor was not supplied, but it was available at a restaurant and tavern on the premises.
There was some conflict in the testimony as to the percentage of the employees in attendance, but it is clear that Damar had made reservations for 150 people. Hass testified that 149 were present, of whom approximately 105 to 110 were employees, the remaining number being made up of relatives, friends and union officials. The personnel manager, William J. Willard, who had been present, estimated that 65% to 75% of all employees were at the picnic. He also stated that the company intended to have a similar outing during the current year.
Petitioner testified, in substance, that his wife had given him the impression that she had to go to the picnic. On the *230 day in question (July 2, 1960) he drove her to the employer's premises in Elizabeth, N.J., to meet fellow employees who provided her with transportation to the Cider Mill Inn.
The record reveals that decedent and Mamie Losey left the picnic grounds about 7 P.M. in an automobile driven by Calvin Crowley (an employee of the Automatic Mailing Service, one of the affiliates of Damar), and, while traveling homeward on Vaux Hall Road, the operator of the car apparently failed to negotiate a turn in the road, resulting in an accident that was fatal to the driver and Janet Ricciardi.
The courts of this and other states have evolved and resorted to a number of criteria in determining whether certain recreational or social functions such as picnics, outings, Christmas parties, banquets, athletic events and the like, are sufficiently related to employment to come within the scope of workmen's compensation coverage. There was an enumeration of such criteria in Moore's Case, 330 Mass. 1, 110 N.E.2d 764 (Sup. Jud. Ct. 1953), which was approvingly restated in Harrison v. Stanton, 26 N.J. Super. 194, 199 (App. Div. 1953), affirmed 14 N.J. 172 (1954), namely: (a) the customary nature of the activity; (b) the employer's encouragement or subsidization of the activity; (c) the extent to which the employer managed or directed the recreational enterprise; (d) the presence of substantial influence or actual compulsion exerted upon the employee to attend and participate, and (e) the fact that the employer expects or receives a benefit from the employee's participation in the activity. This is not an exclusive list, and all elements mentioned need not be present. As stated in Moore's Case, "What is required in each case is an evaluation of the significance of each factor found to be present in relation to the enterprise as a whole. Upon such an evaluation must the decision as to the closeness of the connection between the employment and the recreation ultimately rest." (330 Mass., at p. 5, 110 N.E.2d, at p. 767.)
*231 In assessing the record sub judice, it should be noted:
(1) The employer sponsored a picnic consistent with its intention to have two annual entertainment affairs for its employees. Management proposed to repeat the 1960 picnic in 1961. It may fairly be said that the time and space limits of decedent's employment were expanded to "picnic-day at the picnic-grounds." Note, 1 Larson, Workmen's Compensation Law, § 22.23, p. 336 (1952).
(2) The company financed the event in an amount equivalent to 5% of its weekly payroll. Parenthetically, it is observed that the furthering of better employment relations by extracurricular activities sponsored by an employer is a legitimate and incidental part of a corporation's business. This has long been recognized in tax law, where expenses for such purposes are generally regarded as deductible from income. 4 Mertens, The Law of Federal Income Taxation, § 25.119 (1954), and the decisions of the Board of Tax Appeals therein cited.
(3) Although there was no actual compulsion to attend, the employees were requested to do so through the liaison committee; a reservation list was prepared, and it was made known to the employees in advance that the affair entailed a cost of $7.50 per person for which they would not be charged. The outing was held on the Saturday before the Fourth of July, and a substantial percentage of the work force, representing the three divisions of Damar, was present. Direct compulsory attendance, on a holiday week end, could have had the very human effect of creating employee resentment and, thus, would defeat the very purpose the employer intended. Sponsoring such an adventure and making possible the inducements which were offered would have a potential for psychological compulsion of a more realistic and advantageous nature than a specific company directive.
(4) Management encouraged the selection of an employees' picnic committee to finalize the details, recommended the Cider Mill Inn location and made available two station wagons for transportation purposes The top echelon of the *232 company's officers were in attendance, participated in the welcoming speeches and awarded prizes.
(5) The affair was not solely inspired by altruistic motives of the company as a gratuity for the exclusive welfare of the employees. The realities of the commercial world command the recognition that social-business interludes to stimulate good will, esprit de corps and better relations between employer and employee are desirable business accomplishments. The judge of compensation attempted to make crystal clear the expected benefits to the employer. His interrogation of the company's vice-president and general manager developed the following:
"THE JUDGE: In other words, let's see if we can get exactly what you are saying. You felt that it represented an opportunity to improve the relationships between the employees, themselves?
THE WITNESS: Themselves.
THE JUDGE: And within the various divisions?
THE WITNESS: That's correct.
THE JUDGE: And also the relationship between the employees and the employer?
THE WITNESS: The employees and the employer, the employees and the supervisors, the employees and the foremen.
THE JUDGE: Now I understand your testimony. Proceed."
The "mutual benefit doctrine" has been iterated and applied to support compensability in numerous decisions. See for example, Harrison v. Stanton, supra (funeral director's employee injured while driving a baby sitter home after he and his wife had returned from a social function deemed to have been a promotional incident of his employer's business); DuCharme v. Columbia Engineering Co., 31 N.J. Super. 167 (App. Div. 1954) (injury sustained at a Christmas party sponsored by employer); Kelly v. Hackensack Water Co., 10 N.J. Super. 528 (App. Div. 1950), opinion after remand 23 N.J. Super. 88 (App. Div. 1952) (employee killed during a company outing when he fell into a ravine on a return walk from the picnic park to the excursion boat); and, the more recent case of Complitano v. Steel & Alloy Tank Co., 63 N.J. Super. 444 (App. Div. 1960), dissenting opinion adopted by *233 the Supreme Court in 34 N.J. 300 (1961), where Judge Conford, in his dissent, held that an employee should be compensated for injuries inflicted in a softball game played after regular working hours, saying:
"By now there is nothing novel in the general idea that the injury of an employee while engaged in a recreational activity is compensable if there is sufficient identification of the employer with the activity by way of time and location, or through sponsorship or encouragement of the activity by, or benefit therefrom to, the employer." (63 N.J. Super., at p. 459)
Compare Cuna v. Board of Fire Com'rs, Avenel, 79 N.J. Super. 264 (App. Div. 1963), and see Gordon, "Judicial Pathways in Workmen's Compensation," 16 Rutgers L. Rev. 284, 289 (1962).
Bearing the foregoing in mind, we now turn to the so-called "going-and-coming" rule. The basic rule stands for the proposition that generally an employee who sustains an accidental injury on his way to or from his regular place of employment is not covered by workmen's compensation. As stated by our Supreme Court in Morris v. Hermann Forwarding Co., 18 N.J. 195, 197 (1955) (salesman injured on way home):
"The general principles are not in dispute and in hornbook fashion may be stated thusly: ordinarily when an employee is on his way to his regular place of employment or is on his way home therefrom, and sustains injury, such injury does not arise out of and in the course of his employment, Moosebrugger v. Prospect Presbyterian Church, 12 N.J. 212, 214-215 (1953)."
The conceptual reasoning for the doctrine seems to be that an employee, while merely going to or coming from his regular work, is not rendering a service to his employer, and any exposure to risks in such travel is inherent to him not as an employee but rather as a member of the traveling public. See 8 Schneider, Workmen's Compensation Law (perm. ed. 1951), § 1710, pp. 3-8; 1 Larson, op. cit., § 16.30, p. 232. Cases illustrating the application of the general rule include: Fenton v. Margate Bridge Co., 24 N.J. Super. 450 (App. Div. 1953), certification denied 12 N.J. 350 (1953) (hazard *234 which caused accident was 30 feet from employer's toll bridge); Moosebrugger, supra (church sexton struck by automobile on his way to church after supper); Grady v. Nevins Church Press Co., 120 N.J.L. 351 (E. & A. 1938) (petitioner about to enter employer's factory fell on icy patch on inclined driveway); Grotsky v. Charles Grotsky, Inc., 121 N.J.L. 461 (Sup. Ct. 1938), affirmed per curiam 124 N.J.L. 572 (E. & A. 1940) (store salesman injured on regular route home); Gullo v. American Lead Pencil Co., 119 N.J.L. 484 (E. & A. 1938) (injured on icy sidewalk in front of entrance); Gilroy v. Standard Oil Co., 107 N.J.L. 170 (E. & A. 1930) (explosion and injuries while riding along public highway adjacent to place of employment). See generally 58 Am. Jur., Workmen's Compensation, § 217, pp. 723-724 (1948); Annotation, 85 A.L.R. 97 (1933).
The rule, however, is not without qualification. Its generality "inevitably spawned exceptions." O'Brien v. First Camden Nat. Bank & Trust Co., 37 N.J. 158, 162 (1962). Indeed, it has been said that the numerous exceptions "have now swallowed the rule." Horovitz, "Workmen's Compensation: Half Century of Judicial Developments," 41 Neb. L. Rev. 1, 51 (1961); Meo v. Commercial Can Corp., 80 N.J. Super. 58, 65 (App. Div. 1963). Manifestly a strict application would in many cases cause unusual hardship and inflict an injustice that would thwart the primary objectives of our industrial compensation laws. Dean Larson has commented that "dissatisfaction with such arbitrary results has led to many suggested formulas for broadening the rule." 1 Larson, op. cit., § 15.12, p. 196.
The four exceptions, classified and documented in Rafferty v. Dairymen's League Co-Operative Ass'n, Inc., 16 N.J. Misc. 363, 366-368, 200 A. 493 (Dept. Labor 1938), were noted in Moosebrugger v. Prospect Presbyterian Church, supra, dissenting opinion, 12 N.J., at p. 218. This court enumerated with supporting citations five classifications in Jasaitis v. Paterson, 48 N.J. Super. 103, 109-110 (App. Div. 1957), affirmed 31 N.J. 81 (1959), opinion on remand 55 *235 N.J. Super. 138 (App. Div. 1959); and in O'Regan v. New Jersey Hardware Co., 74 N.J. Super. 41, 46-47 (Cty. Ct. 1962), six groupings of exceptions were listed.
Horovitz, in his above-mentioned article, refers to seven types of exceptions, with the added remark that at least a dozen more have received judicial recognition. The author then comments, "Modern courts are ignoring this court-made rule and properly judging each case on its own facts and merits" (Horovitz, op. cit., p. 51), and cites in his extensive footnotes Brousseau v. Blackstone Mills, 100 N.H. 493, 130 A.2d 543 (1957), wherein the Supreme Court of New Hampshire declared, "we do not regard the going-and-coming rule as either necessary or particularly useful * * *." (100 N.H., at p. 495, 130 A.2d, at p. 545.) See also 25 NACCA L.J. 211 (1960), for the statement:
"The `going-and-coming' rule is a blot upon the liberal and beneficent bent of workmen's compensation legislation. Larson writes disapprovingly of it. 1 Larson, Workmen's Compensation § 15.11 (1952). Dean Roscoe Pound castigates it. 14 NACCA Law Journal 400. Horovitz marshals an invincible array of arguments for its abolishment. 14 id. 36-46. In nearly every edition of this Journal, the multifarious exceptions engrafted upon the rule have inspired critical discussion of its application * * *."
It is beyond question, however, that the basic rule continues to prevail in New Jersey, and reference is made to the foregoing merely to emphasize its limited effectiveness as a general doctrine and the apparent accelerated trend toward engrafting thereon an increasing number of exceptions.
The rule was originally laid down for application to employees working stated hours at a regular place of employment. No useful purpose would be served by restating and documenting the several classifications of exceptions that have been recognized in sundry decisions. Suffice it to mention two pertinent classes: (a) accidents during necessary travel while discharging or serving some special purpose, duty or mission for an employer, Voehl v. Indemnity Ins. Co., 288 U.S. 162, 169-170, 53 S.Ct. 380, 383, 77 L.Ed. 676, 680 (1933); Bobertz v. Board of Education of Hillside Twp., 134 *236 N.J.L. 444, 447 (Sup. Ct. 1946), reversed on other grounds 135 N.J.L. 555 (E. & A. 1947); Van Ness v. Borough of Haledon, 136 N.J.L. 623, 627 (E. & A. 1948); Bradley v. Danzis Pharmacy, 5 N.J. Super. 330, 332 (App. Div. 1949); and (b) accidents that occur in traveling to and from employer-sponsored functions. The latter category has been disavowed in foreign states adhering to the Illinois decision in F. Becker Asphaltum Roofing Co. v. Industrial Commission, 333 Ill. 340, 164 N.E. 668 (Sup. Ct. 1929). Accord, Jewel Tea Co. v. Industrial Commission, 6 Ill.2d 304, 128 N.E.2d 699 (Sup. Ct. 1955). See also Stout v. Sterling Aluminum Products Co., 213 S.W.2d 244 (Mo. Ct. App. 1948); Maeda v. Department of Labor and Industries, 192 Wash. 87, 72 P.2d 1034 (Sup. Ct. 1937); Wooten v. Roden, 260 Ala. 606, 71 So.2d 802 (Sup. Ct. 1954). It has, however, been recognized in Pennsylvania, Connecticut and New York. See Miller v. Keystone Appliances, 133 Pa. Super. 354, 2 A.2d 508 (Super. Ct. 1938); Stakonis v. United States Advertising Co., 110 Conn. 384, 148 A. 334 (Sup. Ct. of Err. 1930); Dodge v. Wm. J. Keller, Inc., 304 N.Y. 792, 109 N.E.2d 85 (Ct. App. 1952); cf. Mack v. State Street Mill Bargain Center, Inc., 17 A.D.2d 1006, 233 N.Y.S.2d 810 (App. Div. 1962), and Turner v. Willard, 154 F. Supp. 352 (S.D.N.Y. 1956). In New Jersey such a class of exceptions has been favorably considered, based on particular facts presented, in Kelly v. Hackensack Water Co., supra, and in Harrison v. Stanton, supra. In O'Brien v. First Camden Nat. Bank & Trust Co., supra, 37 N.J., at p. 163, it was said:
"The various exceptions adopted have in turn brought back into sharper focus the basic statutory test of compensability, that is, whether under the facts and circumstances of the particular situation the injury arose out of and in the course of the employment. Too easy reference to the subordinate going and coming precept manifestly pointed in the direction of injustice in particular fact complexes.
Application of this basic test to the facts in a given case must be engaged in with an appreciation of the beneficent social purpose of workmen's compensation. When so applied, if it can be said reasonably that the employee is serving an incidental interest of his employer at the time of injury, the right to compensation exists."
*237 The proofs before us afford an ample basis for the application of the principle of "mutual benefit" and support the conclusion that respondent company had annexed to its business and made incident thereto a social picnic function. Decedent's attendance was reasonably related to her employment. She encountered a fatal accident which would not have occurred but for that employment event, which took place on a nonworking day during special and unusual hours. She was unquestionably induced by the picnic committee to attend, necessitating travel over a road peculiar to the location of the outing and by a means of transportation suggested by the committee and presumably sanctioned or at least acquiesced in by the company. There was a consequent exposure to the perils of the highway extraneous to decedent's usual method of travel to and from a regular place of employment. The fact that the tragic mishap occurred on a public roadway is of no controlling moment. "An accident arises out of the employment where it results from a risk incidental to the employment, as distinguished from a risk common to all mankind, although the risk incidental to the employment may include a risk common to all mankind." Pierce v. Provident Clothing and Supply Co., 1 K.B. 997, 1003 (1911), cited and quoted in Cudahy Packing Co. v. Parramore, 263 U.S. 418, 424, 44 S.Ct. 153, 154, 68 L.Ed. 366, 370 (1923).
Respondent, by directing our attention to Industrial Commission v. Murphy, 102 Col. 59, 76 P.2d 741, 115 A.L.R. 990 (Sup. Ct. 1938), urges in substance that a recognition of any validity to petitioner's claims would serve as a warning to employers that they may concern themselves with the social life and recreational activities of their employees only upon penalty of liability for accidents and injuries, thus indicating a cause for employers to withdraw sponsorship of such activities. If the risk is an unreasonable one to be underwritten by the employer and to be absorbed by industry, a fortiori, would it not be an unreasonable risk to impose upon the employee? Neither may wish to assume the attendant hazards without workmen's compensation. The company, for its own *238 corporate reasons, determines the character, extent and location of the social and recreational functions it wishes to sponsor. It should calculate the risks as well as the benefits and, through the medium of insurance, provide coverage to the fullest extent possible within the intendment of the Workmen's Compensation Law. Note Wilson v. General Motors Corp., 298 N.Y. 468, 84 N.E.2d 781 (Ct. App. 1949), referred to in Complitano v. Steel & Alloy Tank Co., supra, 63 N.J. Super., at pp. 468-469.
The fundamental purpose, the humane objective and the policy of liberal construction of workmen's compensation laws have been frequently enunciated by our courts. See the majority opinion in Tocci v. Tessler & Weiss, Inc., 28 N.J. 582 (1959), and the minority opinion in Moosebrugger v. Prospect Presbyterian Church, supra, which reflect the prescient declaration of Mr. Justice Brandeis in 1917:
"Attention should be directed, not to the employer's fault, but to the employee's misfortune. * * * Society needs such a protection as much as the individual; because ultimately society must bear the burden, financial and otherwise, of the heavy losses which accidents entail. And since accidents are a natural, and in part an inevitable, concomitant of industry as now practised, society, which is served thereby, should in some way provide the protection. To attain this end, co-operative methods must be pursued; * * *." New York Central R. Co. v. Winfield, 244 U.S. 147, 165, 37 S.Ct. 546, 554, 61 L.Ed. 1045, 1054-1055 (dissenting opinion).
As I view the record, Mrs. Ricciardi's death was attributable to an accident reasonably traceable to an employment risk incident to a social employment function to which her presence was requested by the committee in charge. It was a work-connected event at a site other than the regular place of employment, designated by the employer which sponsored, financed and actively participated in the affair.
I concur with the result reached by the majority, but, on the issue of compensable accident, vote to affirm the concordant findings of the trial court and the judge of compensation.