WALKER D. HINES, Director General of Railroads, Operating the Cumberland Valley Railroad, Employer,

*vs.*

GENA I. BAECHTEL et al., Claimants.

*Workmen's Compensation Law—Railroad Employee—Interstate Commerce.*

An employee of a railroad company, injured while carrying to the telegraph office a message relating to the company's supply of coal at a particular point, which was one of his customary duties, *held* to be engaged in work not sufficiently connected with the operation of trains to give it an interstate quality, so as to exclude the claim from allowance under the State law.

p. 518

The obvious purpose of Section 33 of the Workmen's Compensation Law was expressly to limit the application of the State law to such classes of intrastate work for interstate carriers as were plainly not affected by federal legislation.

pp. 518, 519

*Decided January 12th, 1921.*

Appeal from the Circuit Court for Washington County (Henderson, J.).

The cause was argued before Boyd, C. J., Urner, Stockbridge, Adkins, and Offutt, JJ.

*Henry H. Keedy, Jr.,* with whom was *Walter K. Sharpe* on the brief, for the appellant.

*Charles D. Wagaman* and *Elias B. Hartle,* for the appellees.

URNER, J., delivered the opinion of the court.

The dependent widow and children of Charles Baechtel, an employee of the Cumberland Valley Railroad Company, who was killed in its service, made application to the State Industrial Accident Commission for an award of compensation to be paid by the company under the provisions of the Maryland Workmen's Compensation Law. The claim was allowed after the Director General of Railroads had been made a defendant, by reason of the fact that the Cumberland Valley Railroad was under his control at the time of the accident and of the hearing before the Commission. On appeal to the Circuit Court for Washington County the order of the Commission was affirmed. The case is before us on appeal from that judgment.

The question to be determined, upon the undisputed facts, is whether the service which Baechtel was performing when he was killed had such a relation to interstate commerce as to exclude the pending claim from allowance under the Workmen's Compensation Law of this State. In the court below the case was tried without a jury, on the testimony taken before the State Industrial Accident Commission and transmitted as part of the record on the appeal. It was proven that Baechtel was employed at the railroad company's engine house at Hagerstown as janitor, "handyman," storekeeper and clerk, and that he was struck by a locomotive while he was crossing the railroad tracks in the act of carrying some papers from the engine house to the telegraph office at the freight station. The papers consisted of a "crew report" of the Norfolk and Western Railroad Company, and a coal report of the Cumberland Valley Railroad Company, the two companies having the use of the same track and station facilities at that point. The crew report was to be sent by telegraph to Roanoke, Virginia, and the coal report to Chambersburg, Pennsylvania, the former being a statement of Norfolk and Western crew vacancies for which extra men would be needed, and the latter a record of the quantity of coal

available for the use of the Cumberland Valley engines. All of the trains operated on both railroads in Maryland pass also through other states and are therefore used for the purposes of interstate commerce. The employment of Baechtel was solely in the service of the Cumberland Valley Railroad Company.

Upon the essential facts we have stated, the inquiry is whether the errand on which Baechtel was proceeding at the time of the accident was "intrastate work" which is "clearly separable and distinguishable from interstate or foreign commerce," within the purview of the Workmen's Compensation Law (*Code,* Art. 101, Sec. 33), or whether he was then "engaged in interstate transportation, or in work so closely related to it as to be practically a part of it," according to the test applied by the Supreme Court of the United States to questions of this nature. *Shanks* v. *Del. L. &. W. R. Co.,* 239 U. S. 556; *Pederson* v. *Del. L. &. W. R. Co.,* 229 U. S. 146; *Phila., B. & W. R. R. Co.* v. *Smith,* 132 Md. 345, affirmed in 250 U. S. 101.

While the trains of the Cumberland Valley Railroad Company were all employed in interstate commerce, the company was also engaged in intrastate transportation. It had a number of stations in this State between which there was local traffic over its line. If, however, the duty which Baechtel was performing should be held to be a part of the operation of its trains, the conclusion would inevitably follow that the service was interstate in its character because of the movement beyond the state for which every train was utilized. It could not be so classified, in view of the special circumstances of the case, except upon the theory that it had a direct relation to the operation of the trains. But that theory does not commend itself to our judgment, when we consider the real nature of Baechtel's work in the light of the Supreme Court decisions which deal with analogous cases. The service he was performing was that of a messenger. This was evidently one of his customary duties. On the occasion of the

accident he was carrying a message relating to the supply of coal at Hagerstown for the use of the company by which he was employed. The crew report of the Norfolk and Western Railroad Company which he also had with him need not be considered, as he was not in that company's service. When the message as to the coal supply of the Cumberland Valley Railroad Company was delivered at the railway telegraph office, it was to be dispatched by the operator there to the company's superintendent at Chambersburg. Upon the information thus communicated the superintendent probably would determine as to the extent to which further shipments of coal for the company's use at Hagerstown might be required. There were consequently several different agencies of service intervening between the performance of Baechtel's duty as messenger and the arrival of coal to be used in the company's locomotives. In our opinion, therefore, the work he was doing when he was run over and killed was not sufficiently connected with the operation of the trains to have attributed to it an interstate quality.

In the case of *Chicago, B. & Q. R. Co.* v. *Harrington,* 241 U. S. 177, it was decided that a member of a railway switching crew engaged in moving loaded coal cars from a storage track to a shed where the coal was to be placed in bins or chutes and supplied, as needed, to locomotives, was not then employed in interstate commerce, even though it were assumed that none of the locomotives were used exclusively for intrastate traffic. It was also held that the inquiry was concerned with the nature of the service being rendered by the employee at the time of the injury, and that, as stated in the opinion of the court, delivered by JUSTICE HUGHES, "it is not important whether he had previously been engaged in interstate commerce, or that it was contemplated that he would be so engaged after his immediate duty had been performed."

The facts in the case of *Lehigh Valley R. Co.* v. *Barlow,* 244 U. S. 183, were not materially different from those in the case just cited, and the decision was to the same effect.

The case of *Delaware, L. & W. R. Co.* v. *Yurkonis,* 238 U. S. 439, involved the question whether an employee of a railroad company, engaged in mining coal in its colliery for use in the operation of its trains in interstate commerce, was himself employed in such commerce within the meaning of the Federal Employers' Liability Act. This question was decided in the negative.

On the other hand, in *Erie Railroad Co.* v. *Collins,* 253 U. S. 77, it was held that a railway employee whose duty it was to operate a gasoline engine for pumping water to supply interstate engines, and also those used in intrastate traffic, was engaged in interstate commerce while in the discharge of his duty at the pumping station. In the case of *Erie Railroad Co.* v. *Szary,* 253 U. S. 86, the Supreme Court concluded that an employee whose service consisted in preparing sand for engines having destinations within and beyond the state, and who, after sanding a number of engines, was injured while crossing a track to empty into a pit, according to custom, the ashes he had removed from an oven in which the sand had to be dried before being supplied to the engines, was employed in interstate commerce at that time. Also, in the case of *Southern Pac. Co.* v. *Industrial Accident Commission,* 251 U. S. 259, it was held that the service of an electric lineman, employed to keep in proper condition a cable by which electric current was conveyed for the operation of an interstate railway, was so closely connected with interstate commerce as to be practically a part of it, and that with respect to an injury sustained in the performance of such a service the Workmen's Compensation Law of the state could not be invoked.

The decisions to which we have referred appear to make a distinction between work which has a direct relation to the operation or equipment of interstate trains and that to which such a relation cannot be attributed. The employee who operated the pump supplying water to the locomotives and the one who prepared and delivered the sand which the en-

gines required, and the lineman who kept in order the cable by which the motive power of the railway was conveyed, were all regarded as contributing directly to interstate transportation. But the mining or storage of coal, to be subsequently placed on the engines through the processes of a separate and distinct service, was considered to rest upon a different basis, so far as the question of its relation to interstate commerce was concerned. While the coal was to be used on locomotives attached to interstate trains, yet the duties of the employees who mined the coal and stored it beside the tracks were fully completed when it was in a position where it was not available for its intended purpose without the independent action of those assigned to the duty of transferring the fuel to the engines.

It is evident that the service of a messenger who carried coal reports to a railway telegraph office is much more remote from the operation of the trains than is that of the employee who moves the coal itself to a position from which it can be supplied to the locomotives. In the present case, therefore, we can have no difficulty in approving the conclusion of the court below, that the deceased employee was not engaged in interstate commerce at the time of the accident in which he lost his life.

It has been argued that because the appellant's trains were all used for the purposes of interstate traffic, there was no intrastate work which could be found to be clearly separable from that traffic within the meaning of Section 33 of the Workmen's Compensation Law, which provides, in part, as follows: "The provisions of this Act shall apply to employers and employees engaged in intrastate and also in interstate or foreign commerce for whom a rule of liability, or method of compensation, has been or may be established by the Congress of the United States, only to the extent that their mutual connection with intrastate work may and shall be clearly separable and distinguishable from interstate or foreign commerce." It was the obvious purpose of this provi-

sion to expressly limit the application of the State law to such classes of intrastate work for interstate carriers as were plainly not affected by Federal legislation. The Supreme Court decisions we have cited indicate that the present Federal Employers' Liability Act does not apply to such a service as we have under consideration in this case. It was intrastate work, and we think it was sufficiently separable and distinguishable from the interstate commerce conducted by the appellant to bring it within the scope and effect of the Workmen's Compensation Law of Maryland.

The only exception in the record refers to the rejection of five prayers offered by the appellant. They were all based upon the theory of defense which we have discussed. The prayers were properly overruled.

*Judgment affirmed, with costs.*