JiDUFRESNE, Judge.
Before CHARLES CUSIMANO, J. Pro Tern., and DUFRESNE and DALEY, JJ.
This appeal arises from a worker’s compensation claim filed by plaintiff, Donna D. Guillory (Guillory) against her employer, defendant, St. Jude Medical Center (St. Jude). Guillory claims she developed radiculomyelo-pathy triggered from a Hepatitis vaccination.
Ms. Guillory was a neurodiagnostic technician working for St. Jude in 1992, when she was requested to participate in her employer’s hospital-wide program for inoculation against Hepatitis B. As a part of the inoculation program, Ms. Guillory received three (3) separate inoculations on July 10, 1992, August 10,1992, and January 15,1993.
Ms. Guillory claims she developed post-vaccinal neurological sequelae as a result of her work-related inoculation in which she is entitled to receive compensation for a temporary total disability from June 5, 1993 through September 28,1995.
After a trial on the merits, the workmen’s compensation hearing 12offlcer issued reasons and rendered judgment in favor of Ms. Guil-lory, awarding temporary total disability benefits from June 5, 1993 through September 28, 1995, as well as payment for temporary total disability benefits from September 29, 1995 through September 29, 1996, for a 52 week period of rehabilitation and allowed Ms. Guillory the right to pursue payment of supplemental earnings benefits (SEB) after expiration of the rehabilitation period on September 29, 1996. Ms. Guillory was entitled to payment of all medical bills, medication expenses and transportation expenses from July 10, 1992 through September 28, 1995, with St. Jude giving credit for all medical benefits paid to date. The hearing officer also found the employer, St. Jude, and its insurer, National Union Fire Insurance Company, arbitrary and capricious in their refusal to pay workmen’s compensation disability benefits, medical bills and rehabilitation expenses and assessed the penalty of $2,000.00 or 12% of the unpaid compensation, whichever is greater, as well as attorney’s fees of $4,000.00, for failing to recognize Ms. Guillo-ry’s claim for compensation and for failing to pay benefits.or medical expenses associated with Ms. Guillory’s occupational disease and all costs are to be paid by St. Jude.
From this decision, St. Jude appeals contending that the hearing officer erred in finding Ms. Guillory had contracted a com-pensable occupational disease by accident during the course and scope of her employment. We agree with the hearing officer’s very thorough and well written reasons for judgment. Based upon our review, we find |3the record clearly supports the hearing officer’s findings which are subject to the manifest error standard of review. Great deference is to be accorded the hearing officer’s findings and reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. Virgil v. American Guarantee & Liability Ins. Co., et al., 507 So.2d 825 (La.1987); Bruno v. Harbert International Inc., 593 So.2d 357 (La.1992). Applying this standard, we affirm. St. Jude has appealed the decision of the workmen’s compensation hearing officer, and has assigned five errors for our review, to-wit:
*1200 1. The workmen’s compensation hearing officer erred in finding that claimant’s neurological illness was casually related to the Hepatitis B vaccine.
2. The workmen’s compensation hearing officer erred in finding that claimant was entitled to temporary total disability benefits from June 5, 1993 through September 28, 1995, rather than finding that claimant’s benefits terminated on the date on which she reached maximum medical improvement.
3. The workmen’s compensation hearing officer erred in finding that claimant’s period of rehabilitation began on September 29, 1995, the day after she rendered judgment, rather than on the date on which claimant began participating in rehabilitation with Louisiana Rehabilitative Services.
4. The workmen’s compensation hearing officer erred inJjfailing to decrease claimant’s benefits to supplemental earnings benefits based on the jobs identified by Larry Stokes, the employer’s choice of vocational expert, after claimant completed 52 weeks of vocational rehabilitation.
5. The workmen’s compensation hearing officer erred in finding that the employer and insurance carrier were arbitrary and capricious in failing to pay worker’s compensation disability benefits, medical bills and rehabilitation expenses and in awarding penalties and attorney’s fees.
The record reflects that following the first vaccination on July 10, 1992, Ms. Guillo-ry experienced chills, and “flu-like” symptoms which subsided within 24 hours after they began. Immediately following the second inoculation on August 10,1992, Ms. Guil-lory again experienced chills, sweats and site tenderness at the point where she had received the injection. In addition, she felt fluish for a 24 hour period of time.
On August 14, 1992, Ms. Guillory had an unrelated surgery for the removal of a ganglion cyst on her left hand. The next day, August 15, 1992, when she arose from a nap, she found that the right side of her face was numb. She went to St. Jude Hospital Emergency Room and they informed her that she had probably slept on the wrong side of her face. However, the numbness returned. In addition, she felt sick and had an unsteadiness of her gait. After these symptoms, Ms. Guillory had a conference with Dr. Terrence D’Sousa (neurologist) who |5examined her and found she was experiencing blurred vision, numbness on the right side of her face and ataxia (unsteadiness of gait).
Over the next several months, Ms. Guillo-ry, at various times, experienced continued or intermediate episodes of tingling and fluish symptoms. On January 15, 1993, Ms. Guillory received the third Hepatitis B injection. By the time she arrived home, she began itching, had hives and a rash on her legs, chest and back. She immediately called the nurse who administered the inoculation and she advised Ms. Guillory to take Bena-dryl for these symptoms.
Over the next several months, Ms. Guillory experienced tingling in her head, chest, back and legs. Then on May 27,1993, Ms. Guillo-ry awoke with severe pain in her spine from the base of her skull radiating down into her legs. She experienced an extreme sensation of pressure in her head and when she stood to get out of bed, her legs buckled and gave way. Once at work, her gait disorder (ataxia), weakness in her legs and the spinal pain caused her to seek medical attention from Dr. Urebe (internist). After Dr. Urebe examined her, he recommended that she have a neurological consultation. On that afternoon, she visited the office of Dr. Michael Wilen-sky. Dr. Wilensky initially saw Ms. Guillory on May 27,1993, and scheduled her for diagnostic testing, which ultimately resulted in her being admitted to St. Jude Hospital on June 7, 1993.
Dr. Wilensky noted in his discharge summary of June 11, 1993, that Ms. Guillory’s diagnosis was “transverse myelitis with additional |6cerebella signs suggestive of encepha-lomyelitis.” He also stated, at that time, that “in view of the close history of hepatitis vaccinations would suggest that there may be a relationship to this neurological condition as a possible post-vaccinal neurological se-quelae.”
*1201 Following the course of her hospitalization, Ms. Guillory was advised on October 11, 1993, that she would be placed on worker’s compensation.
Following this determination, Ms. Lindsey Morden, the workmen’s compensation administrator for St. Jude, scheduled an evaluation of Ms. Guillory by Dr. Susan Boston. Dr. Boston was unable to determine the cause and origin of Ms. Guillory’s condition and ordered an MRI. On October 20, 1993, Lindsey Morden notified Ms. Guillory in writing advising her that her claim was non-compensable. At that time, St. Jude claimed that Dr. Boston’s report was justification for its denial. Consequently, on April 11, 1994, Ms. Guillory instituted a claim for workmen’s compensation and on a status conference of May 6, 1994, all parties agreed to a third opinion by a physician selected by the Director, The Office of Worker’s Compensation, pursuant to LSA-R.S. 23:1123. The Director, The Office of Worker’s Compensation, selected Dr. Kenneth Vogel, who referred Ms. Guillory to Dr. Leon Weisberg, a neurologist at Tulane Medical Center. Dr. Weisberg determined that Ms. Guillory was suffering from a radiculomyelopathy. Dr. Weisberg opined that Ms. Guillory’s condition was triggered by the vaccine.
Dr. Weisberg indicates that on August 15, 1992, and August 17, |71992, Ms. Guillory complains of intermittent tingling on the right side of her mouth, visual blurring and some unsteadiness. Dr. Weisberg concluded that Ms. Guillory suffered from herpes zoster, which was triggered by the hepatitis vaccine and the episode of August, 1992. The herpes zoster triggered the neurological disturbances which ultimately caused Ms. Guil-lory’s disability.
Dr. D’Souza related the precipitating event of Ms. Guillory’s symptomology and medical condition was the August 10, 1992, inoculation for both the ataxic condition and the trigeminal numbness.
From the record, we glean that Ms. Guillo-ry’s two treating physicians, Drs. D’Souza and Wilensky, have opined that Ms. Guillo-ry’s neurological impairment was caused by an activation of the autoimmune system triggered by the inoculation for Hepatitis B on August 10, 1992, which caused the neurological impairments that have disabled Ms. Guil-lory.
Ms. Guillory has undergone an evaluation by the Louisiana Rehabilitation Service and they have determined that she is severely disabled, because of her ataxia, fatigue and pain, and recommended that she continue her education for another vocation.
Ms. Guillory contends that she is totally and permanently disabled from returning to gainful employment, and, at the very least, is entitled to be classified as “temporary total” disabled through the period of her education.
This matter was tried before the workmen’s compensation hearing officer on August 23, 1995, and in the Judge’s reasons she Isreviewed all the medical testimony that was presented in this case.
The opinions of Drs. Wilensky, D’Souza and Weisberg make a causal connection between the inoculation and the resulted neurological disorders. Dr. Vogel, the physician chosen by the Office of Worker’s Compensation, referred Ms. Guillory to Dr. Leon Weis-berg who is the Chairman of the Department of Neurology at Tulane Medical Center and rendered an opinion on the question of whether the neurological disturbance which began in May, 1993, was related to the hepatitis vaccine. It was Dr. Weisberg’s opinion that the vaccination on August 10, 1992, could very well be the triggering event for Ms. Guillory’s illness.
Therefore, it is clear from the record that Dr. Weisberg’s testimony established a con-nexity between the August 10, 1992 vaccination and Ms. Guillory’s neurological disturbances. St. Jude offers for our review the examination by Dr. Susan Boston on October 6, 1993, from which she could not come up with a diagnosis for Ms. Guillory’s complaints. Nevertheless, she disagreed with the diagnosis of transverse myelitis. Furthermore, she stated that she could not find “anything objective to document any neurological abnormality” and indicated that Ms. Guillory’s complaints could be hysterical.. After reviewing the record, we find that Dr. Boston’s opinion appears to be opposite with the other physician diagnosis of Ms. Guillo- *1202 ry’s condition. In fact, Dr. Boston could not give a diagnosis but ruled out the diagnosis by the other physicians.
We do not give much weight to Dr. Boston’s testimony and it|9seems to be a medical testimony void of any valid and substantiated opinion based on medical evidence. We agree with the workmen’s compensation hearing officer that overwhelming medicals preponderate by clear and convincing evidence in Ms. Guillory’s favor.
St. Jude argues that it provides vocational rehabilitation to Ms. Guillory. The record reveals that Ms. Guillory instituted this action in April, 1994, after having her compensation terminated in October, 1993, after only one payment. St. Jude did not request a vocational evaluation until after July 26, 1994, when they engaged Mr. Larry Stokes. Mr. Stokes did not meet to test or evaluate Ms. Guillory until the day before the trial, and he did not personally survey any of the alleged jobs he suggested were available.
Ms. Guillory pursued vocational rehabilitation on her own and was found to be disabled by the State of Louisiana, Department of Social Services, Louisiana Rehabilitation Services, on May 4, 1994. She underwent a complete vocational evaluation through the State between June 6-10, 1994, which evaluation included a functional capacity. As a result of the evaluation, the State authorized Ms. Guillory for rehabilitation by attending college to secure a degree. The law does not allow nor shall we permit the penalizing of any claimant who seeks to rehabilitate herself in spite of an employer’s reluctance to authorize such rehabilitation. From the record we find that Ms. Guillory’s treating physicians have stated a causal relationship to the inoculation and the resulting neurological disorders. The specially appointed neurologist, Dr. Weisberg, concurs that Ms. Guillory has a | ^neurological disorder. Dr. Weisberg makes a causally connection between her disorders and the inoculation.
In this case, all but one of the physicians (that is, i.e., Dr. Boston, the St. Jude appointed physician) has concluded that Ms. Guillory is disabled and her disability is, in fact, related to a condition that was triggered by the Hepatitis B inoculation. In fact, the only doctor that does not agree, Dr. Boston, has not made any diagnosis.
The workmen’s compensation hearing officer reasoned that Ms. Guillory’s neurological condition was causally created by the vaccine. We find no evidence that the Judge was manifestly erroneous in that decision.
St. Jude argues that Ms. Guillory is able to perform sedentary types of employment and thus the Judge was erroneous in awarding temporary total disability benefits. From the record, it is not clear whether St. Jude’s vocational counselor found any actual wages that were to be paid or whether he made determinations from surveys of potential employers. Mr. Stokes admitted that he does not know the attending requirements, and he gave average wage information because he did not have actual information on the earnings. Furthermore, Mr. Stokes had not contacted any of the prospective employers concerning accommodations for fatigue or Ms. Guillory’s limitations.
“The mere production of a labor market survey does not satisfy an employer’s burden of proof of job availability”. Hopes v. Domtar Industries, 627 So.2d 676 (La.App. 3rd Cir.1993). A review of the Inrecord reveals that Mr. Stoke’s testimony is in vague generalizations and speculative.
The record reveal that the parties have agreed that Ms. Guillory’s benefit was the maximum compensation rate of $307.00 per week, it was also stipulated that Ms. Guillo-ry’s pre-injury wage rate was $797.88 per week. Under the circumstances, St. Jude failed to show with specificity any employment that Ms. Guillory can engage in with her medical disabilities. Furthermore, none of the perspective jobs offered her anything close to ninety percent (90%) of her pre-injury wage. We therefore conclude that Ms. Guillory’s temporary total disability classification should continue. Because there was no evidence of wages equaling 90% of Ms. Guillory’s pre-injury wage, we do not find that SEB benefits accrue.
LSA-R.S. 23:1226 provides for prompt rehabilitation. In this case, St. Jude provided no alternatives. Instead, the State suggest *1203 ed that Ms. Guillory continue her education, not St. Jude. In this case, no counseling in vocational rehabilitation plan was ever provided Ms. Guillory and the labor market survey was a failure.
St. Jude argues against the imposition of penalties and attorney’s fees because it asserts that it played fairly within the parameters of the law. We disagree, from the record, we know that Ms. Guillory’s compensation was stopped upon the medical recommendation of Dr. Boston, who had no opinion or diagnosis of her condition, St. Jude provided no rehabilitation services and tried to inject a “flawed” labor market survey on the very eve of trial. St. Jude l^has continued to deny its responsibility and has further delayed the proper payments due Ms. Guillory.
It appears from the record that Ms. Guillo-ry has continued to fight the legal maneuvering of St. Jude in order to receive the entitled compensation that she is allowed under the law.
The record clearly supports the finding that St. Jude was arbitrary and capricious in failing to recognize Ms. Guillory’s claim for compensation and medical benefits. We adopt the hearing officer’s reasons relating to finding St. Jude arbitrary and capricious in handling Ms. Guillory’s claims.
The workmen’s compensation hearing officer assessed attorney’s fees which we find are inadequate considering the complexity of the medical issues and the requirements placed on the attorney’s preserving Ms. Guil-lory’s rights. Consequently, because this case involves extensive legal work and complex medical and legal issues, along with the requirement of an appeal, we find that the award of attorney’s fees should be increased to $6,000.00.
Accordingly, we amend the judgment and affirm as amended. All costs are assessed against the defendant/appellant.

AMENDED AND AFFIRMED AS AMENDED.