Dear Robert R. Bass, M.D., Executive Director Maryland Institute for Emergency
A recent federal initiative has encouraged public safety personnel, such as law enforcement officers, firefighters, and emergency medical services personnel, to undergo voluntary smallpox vaccination as a precaution against contracting that disease when responding to a bioterrorist incident. As part of that initiative, Congress addressed compensation of individuals who may suffer adverse effects from smallpox vaccination in two pieces of legislation. One law, which was enacted as part of the Homeland Security Act of 2002, is designed to protect those who carry out the smallpox vaccination program, by shifting tort liability to the federal government and limiting that liability to fault-based claims under the Federal Tort Claims Act. The other law, known as the Smallpox Emergency Personnel Protection Act of 2003 ("SEPPA"), creates a new no-fault federal remedy for those who are voluntarily vaccinated as part of the federal initiative or are infected by contact with a person who received such a vaccination.
You have asked for our opinion on the availability of compensation for a Maryland public safety worker who has an adverse reaction to his or her own vaccination or to the vaccination of a co-worker. Your request requires an assessment of the recent federal legislation and of the Maryland Workers' Compensation Act.
For the reasons set forth in this opinion, we conclude:
(1) Public safety personnel who are voluntarily vaccinated as part of the federal initiative and who suffer adverse reactions to their vaccinations will be eligible for benefits under SEPPA, provided they meet the other requirements of that statute. Benefits received under SEPPA are not based on fault, but will be reduced by the amount of any benefits received under the Maryland Workers' Compensation Act. To the extent that these personnel also have claims against entities involved in the manufacture, distribution, or administration of the vaccine, they will be limited to asserting fault-based claims against the federal government under the Homeland Security Act of 2002, and any benefits will be offset by any compensation received under SEPPA.
(2) The two federal statutes also specifically provide for compensation of an individual who is infected and suffers an injury from contact with another individual vaccinated under the federal initiative. Thus, a Maryland public safety worker who is injured as a result of the vaccination of a co-worker will be eligible for compensation under federal law. Again, benefits under federal law will be offset to the extent the individual receives compensation under the State workers' compensation law.
(3) It is likely that the Workers' Compensation Commission or a reviewing court would hold that adverse reactions or complications experienced by a public safety worker arising from voluntary vaccination of the public safety worker or of a public safety coworker vaccinated as part of the federal program would qualify as an accidental injury or as an occupational disease under the Maryland Workers' Compensation Act.
 I Background
A. Smallpox
According to the Centers for Disease Control and Prevention ("CDC"), smallpox is caused by the variola virus that emerged in human populations thousands of years ago. The most common form is known as "variola major," which results in an extensive rash and high fever. That form of the disease has an overall fatality rate of about 30 per cent, although some subtypes of the virus are more lethal. See CDC Smallpox Fact Sheet — Smallpox Overview (December 9, 2002).[1]
A successful worldwide vaccination program has resulted in eradication of the disease. According to the CDC, the last case of smallpox in the United States was in 1949 and the last naturally occurring case in the world was in Somalia in 1977. Routine vaccination of the general public against smallpox was halted in the United States as unnecessary. However, there is now concern that the variola virus might be used as an agent of bioterrorism. Accordingly, the federal and state governments are taking precautions to deal with a smallpox outbreak, including vaccination of key personnel.
B. Smallpox Vaccination Program
On December 13, 2002, the President of the United States announced that, in light of the threat of bioterrorism, smallpox vaccine would be made available on a voluntary basis to medical professionals and emergency personnel and response teams that would be the first on the scene in a smallpox emergency.[2] To implement that decision, the Secretary of Health and Human Services issued a declaration on January 24, 2003, pursuant to the recently enacted Homeland Security Act of 2002, that certain "countermeasures" should be taken for the prevention or treatment of smallpox, including voluntary smallpox vaccination. The declaration targets certain categories of individuals for the program, including "[p]ublic safety personnel, including, but not limited to, law enforcement officers, firefighters, security, and emergency medical personnel who may be called upon to assist smallpox response teams. . . ."68 Fed. Reg. 4212 (January 28, 2003).[3]
The smallpox vaccine currently available is a live-virus vaccine made from a virus related to smallpox. A small number of those individuals who are vaccinated against smallpox will experience adverse reactions, which can be serious or life threatening. In addition, the vaccine virus may spread to an individual who has not been vaccinated from an individual who has been vaccinated. CDC Smallpox Fact Sheet — Vaccine Overview (March 31, 2003).[4]
 II Federal Liability and Compensation Legislation
The compensation provisions of SEPPA and the Homeland Security Act of 2002[5] were triggered by the January 2003 declaration of the Secretary of Health and Human Services. Together, they provide a basis for federal compensation of public safety personnel in Maryland, although the benefits provided under these laws may be adjusted if it is determined that the State workers' compensation law also provides benefits.
A. The Smallpox Emergency Personnel Protection Act of 2003
The Smallpox Emergency Personnel Protection Act of 2003 ("SEPPA"), Pub.L. 108-20, 117 Stat. 638, codified at 42 U.S.C. § 239 et seq., was signed by the President on April 30, 2003, and was made effective retroactively to November 25, 2002. SEPPA is designed to provide no-fault compensation for injuries arising from an adverse reaction to an individual's own vaccination or to the vaccination of a co-worker as part of the federal initiative. Specifically, it provides certain types of compensation to an "eligible individual" for a "covered injury."
To qualify for SEPPA coverage, a public safety worker must be a participant in a smallpox emergency response plan approved by the Secretary of Health and Human Services and must undergo vaccination as part of that plan. In particular, a public safety worker who suffers injury as a result of a smallpox vaccination must fit the statutory definition of "eligible individual," which includes an individual:
 (A) who is a health care worker, law enforcement officer, firefighter, security personnel, emergency medical personnel, other public safety personnel, or support personnel for such occupational specialties;
 (B) who is or will be functioning in a role identified in a State, local, or Department of Health and Human Services smallpox emergency response plan . . . approved by the Secretary [of Health and Human Services];
 (C) who has volunteered and been selected to be a member of a smallpox emergency response plan described in subparagraph (B) prior to the time at which the Secretary publicly announces that an active case of smallpox has been identified either within or outside of the United States; and
 (D) to whom a smallpox vaccine is administered pursuant to such approved plan during the effective period of the [declaration issued by the Secretary of Health and Human Services under the Homeland Security Act]. . . .
42 U.S.C. § 239(a)(6)(A), 239(a)(2).[6] An individual, who has not been vaccinated but who has contact with someone vaccinated under the federal program and thereafter is infected with smallpox, is also an "eligible individual." 42 U.S.C. § 239(a)(6)(B).
The statute defines "covered injury" as:
 an injury, disability, illness, condition, or death (other than a minor injury such as minor scarring or minor local reaction) determined, pursuant to the procedures established under [SEPPA], to have been sustained by an individual as the direct result of [a smallpox vaccination or contact with a vaccinated person during the federal initiative].
42 U.S.C. § 239(a)(3).
Benefits under SEPPA are determined by the Secretary of Health and Human Services and are not subject to administrative or judicial review.42 U.S.C. § 239a(f). They may include medical benefits, payments for lost wages, and a death benefit. 42 U.S.C. § 239c-239e.[7]
SEPPA specifies that it has no effect on compensation under any other federal or state law. 42 U.S.C. § 239h. Moreover, benefits under SEPPA are secondary to other coverage that the individual may have, including "any obligation of . . . any State or local government entity, private insurance carrier, or employer. . . ." 42 U.S.C. § 239c(b),239d(c)(1)(A), 239e(b)(3)(B). Thus, if an individual receives compensation under the Maryland Workers' Compensation Act, any SEPPA benefits will be reduced by a like amount.
B. Homeland Security Act of 2002
Section 304 of the Homeland Security Act of 2002 established certain liability protections in connection with authorized "countermeasures" against smallpox. See Pub.L. 107-296, 116 Stat. 2165, codified in pertinent part at 42 U.S.C. § 233(p). The January 2003 declaration of the Secretary of Health and Human Services triggered those protections in relation to the smallpox vaccination program. These provisions were designed to relieve some liability concerns of individuals and entities involved in the program by substituting federal liability for other possible claims.
The Homeland Security Act provides liability protection for "covered persons" — defined as a manufacturer or distributor of a vaccine, a health care entity under whose auspices the vaccine is administered or decisions about the administration of the vaccine are made, health care professionals who administer the vaccine, State and local entities, and officials, agents, employees, and volunteers of those persons or entities. 42 U.S.C. § 233(p)(7)(B). Thus, health care professionals who administer smallpox vaccinations under the program, as well as the entities that employ them, are "covered persons" under the statute. An individual who transmits the disease after being vaccinated as part of the program is also a "covered person." 42 U.S.C. § 233(p)(7)(B)(v).
The statute shifts liability to the federal government by designating a "covered person" as a federal employee with respect to liability arising out of an authorized "countermeasure" such as the smallpox vaccination program. 42 U.S.C. § 233(p)(1).[8] A person with a claim against a covered person must assert the claim against the federal government following the procedures set forth in the Federal Tort Claims Act. See28 U.S.C. § 1346. Recovery is based on negligence or other fault. See Laird v. Neims, 406 U.S. 797 (1972) (Federal Tort Claims Act provides a remedy only for wrongful or negligent conduct and does not encompass the concept of strict or absolute liability). The "covered person" must cooperate with the federal government in its defense of the claim, or risk substitution as the defendant. 42 U.S.C. § 233(p)(5). In the case of gross negligence or willful misconduct the federal government may recover payments made and costs from the covered person.42 U.S.C. § 233(p)(6).
Recent amendments to the Homeland Security Act coordinate liability under the Act with benefits under SEPPA. To bring a claim under the Homeland Security Act, a claimant must first exhaust any remedies available under SEPPA. 42 U.S.C. § 233(p)(3)(A). In addition, any benefits received under SEPPA are offset against benefits under the Homeland Security Act. 42 U.S.C. § 233(p)(3)(C). Otherwise, the Homeland Security Act provides that a claim against the federal government under the Federal Tort Claims Act "shall be exclusive of any other civil action or proceeding for any claim or suit this subsection encompasses." 42 U.S.C. § 233(p)(3)(B).[9]
 III Smallpox Vaccination and Workers' Compensation
A. The Maryland Workers' Compensation Act
 1. Purpose
The Maryland Workers' Compensation Act, codified at Annotated Code of Maryland, Labor Employment Article ("LE"), § 9-101 et seq., is designed to ensure that employees receive compensation for work-related injuries. R.P. Gilbert R.L. Humphreys, Jr., Maryland Workers' Compensation Handbook, § 2.1 (2d ed. 1993). The statute is to be "construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes. . . . Any uncertainty should be interpreted in favor of the claimant." Livering v. Richardson's Restaurant, 374 Md. 566, 574, 823 A.2d 687 (2003); see also Harris v. Board of Education of Howard County, 375 Md. 21, 57, 825 A.2d 365
(2003).
The Act provides benefits for "covered employees," which it defines in some detail in relation to various occupations. See LE § 9-201 et seq. While most public safety personnel are "covered employees" for purposes of the workers' compensation law, some are not. See, e.g., LE § 9-234 (detailing extent to which members of volunteer fire and rescue companies are covered employees).
While a claim under the Workers' Compensation Act is an employee's exclusive remedy against an employer for a work-related injury, the Act provides the employee with the option of also pursuing a claim against a third-party tortfeasor who may be liable for the injury. See LE § 9-901 et seq.; Gilbert Humphries, supra, §§ 15.0, 15.3. The Act also provides the employer or insurer with certain rights against a third-party tortfeasor. LE § 9-902(a).
2. Compensable events
The Workers' Compensation Act provides compensation for two types of events: (1) accidental personal injury and (2) occupational disease. LE § 9-501 et seq.; Means v. Baltimore County, 344 Md. 661, 664,689 A.2d 1238 (1997).
An accidental personal injury is an accidental injury that "arises out of and in the course of employment." LE § 9-101(b). Maryland has adopted the liberal "positional risk test" under which an injury "arises out of" the employment if it would not have occurred but for the fact that the conditions and obligations of the employment placed the employee in the position where he or she was injured. Livering,374 Md. at 575-76. That test encompasses injuries that occur during activities incidental to employment, but not specifically required by the employer. Id. An injury occurs "in the course of" employment "when it occurs during the period of employment at a place where the employee reasonably may be in the performance of his or her duties and while fulfilling those duties or engaged in something incident thereto." Id.
An occupational disease is a disease "contracted by a covered employee . . . as the result of and in the course of employment." LE § 9-101(g). In order to result in liability under the workers' compensation law, an occupational disease must be "due to the nature of an employment in which hazards of the occupational disease exist and the covered employee was employed before the date of disablement; or . . . [have] manifestations that are consistent with those known to result from exposure to a biological, chemical, or physical agent that is attributable to the type of employment." LE 9-502(d).
3. Relationship to Federal Compensation Programs
The State workers' compensation law defers to federal compensation programs. As a general rule, an employee is not covered by the Workers' Compensation Act if the employee is eligible for compensation under a federal program, other than the Social Security Act, for accidental personal injury or occupational disease. LE § 9-223(a). In addition, an employee is not eligible for workers' compensation benefits if "federal law provides a rule of liability for injury or death. . . ." LE § 9-223(b). However, the employee is covered by the Maryland Workers' Compensation Act, notwithstanding a federal benefit, if the employee is "engaged in intrastate commerce to the extent that the mutual connection of the individual and the employer with intrastate commerce is clearly distinguishable and separable from foreign or interstate commerce." LE § 9-223(c).
B. Application to Injuries from Smallpox Vaccination
No reported Maryland cases discuss the application of the workers' compensation law to injuries arising from smallpox vaccinations. We understand that the Maryland Workers' Compensation Commission, which is charged with construing the Workers' Compensation Act, has not yet had occasion to consider the application of the Act to an injury resulting from a smallpox vaccination under the federal initiative.
There are several cases in other jurisdictions involving complications from smallpox inoculations that were administered in connection with the workplace before smallpox vaccinations ceased in 1972. To determine whether those complications arose out of and in the course of employment, the courts looked to whether the vaccination was of benefit to the employer — as opposed to the employee and the public generally — and whether the employer encouraged vaccination. Compare Saintsing v. Steinbach Co., 1 N.J. Super. 259, 64 A.2d 99
(App.Div.), aff'd, 2 N.J. 304, 66 A.2d 158 (1949) (holding that employee disabled as a result of smallpox vaccination was covered by workers' compensation insurance based on evidence that prevention of smallpox among the employees benefitted the employer who had strongly urged employees to take the vaccine) with Smith v. Seamless Rubber Company,111 Conn. 365, 150 A. 110 (1930) (denying coverage for employee vaccinated in company hospital by health care providers hired by employer when there was no showing of benefit to employer). See generally Opinion of the Alabama Attorney General, Ala. Op. Atty. Gen. No. 2003-071,2003 WL 295536 (February 3, 2003) at *6 (listing cases from numerous jurisdictions).
The voluntary vaccination of public safety personnel to enable State and local government agencies to prepare for and respond to a bioterrorist incident clearly benefits the employer of those workers. If the vaccination is effective, the public safety personnel will be able to avoid contracting the disease and will be able to continue providing public safety services that the employer is charged with providing. The employer has the benefit of a protected workforce during a smallpox outbreak. Moreover, these vaccinations are being conducted with the encouragement and cooperation of the employing agencies.
The fact that the program is voluntary does not diminish the benefit to the employer of the individual's vaccination. See Montgomery County v. Wade, 345 Md. 1, 9, 690 A.2d 990 (1997) (police officer participating in a voluntary police department program entitled to workers' compensation benefits when injured during such participation). Similarly, in other jurisdictions, it has been held that workers' compensation law covers hospital worker who has an adverse reaction to a voluntary inoculation. See Guillory v. St. Jude Med. Ctr, 675 So.2d 1198 (La.App. 1996) (hepatitis B inoculation); Monette v. Manatee Mem. Hosp., 579 So.2d 195
(Fla.App. 1991) (flu shot).
A public safety worker who was voluntarily vaccinated as part of the federal program and who had an adverse reaction to the vaccination would suffer an injury that would not have occurred "but for" the employee's status as a public safety worker while he or she was engaged in an activity incident to that employment. If the employee contracted smallpox or a related disease from the inoculation, it would be attributable to the nature of the employment. Thus, in our view, it is likely that the Workers' Compensation Commission or a reviewing court would hold that such complications qualify either as an accidental injury or as an occupational disease under the Maryland Workers' Compensation Act. Authorities in other states have recently construed their respective workers' compensation laws to reach similar conclusions with respect to the smallpox vaccination program.[10]
C. Effect on Eligibility for Compensation Under SEPPA and HomelandSecurity Act
As noted above, under LE § 9-223, an employee is not covered by the Workers' Compensation Act if the employee is eligible for compensation under a federal program other than Social Security or if federal law provides a "rule of liability for injury or death." LE § 9-223 has been applied in cases involving the Federal Employer Liability Act. Hines v. Baechtel, 137 Md. 513, 113 A. 126, cert. denied, 256 U.S. 698 (1921). A treatise on the State Workers' Compensation Act states that this provision would also exclude employees covered by the Federal Employee Compensation Act, the Longshore Harbor Workers' Compensation Act, the Jones Act, among other laws. R.P. Gilbert R.L. Humphreys, Jr., Maryland Workers' Compensation Handbook, § 4.3-4 (2d ed. 1993). Thus, it appears that LE § 9-223 has been applied to defer to federal compensation schemes that cover federal employees and employees of certain entities engaged in interstate commerce. No authority specifically addresses the question whether eligibility for benefits under SEPPA or the Homeland Security Act affects coverage under the Maryland Workers' Compensation Act.
1. SEPPA
In our view, the Workers' Compensation Act does not eliminate workers' compensation benefits if the employee is eligible for benefits under SEPPA. SEPPA provides that, except as provided in SEPPA itself, it is not to be construed to "override or limit any rights an individual may have to seek compensation . . . under any other provision of Federal or State law." 42 U.S.C. § 239h. Under the Supremacy Clause of the United States Constitution, that provision takes precedence over a provision of a state workers' compensation law that would construe SEPPA to limit workers' compensation benefits. See Rose v. Arkansas State Police, 479 U.S. 1 (1986) (state statute that provided for offset of workers' compensation benefits by benefits payable under federal statute was in conflict with supplementary nature of federal statute and therefore invalid under the Supremacy Clause).[11] In any event, in most instances involving public safety personnel, especially county and other local personnel, the offset provisions of LE § 9-223
would not pertain as most such workers would likely be considered to be engaged in intrastate commerce. See LE § 9-223(c).
Thus, in our view, a public safety worker's eligibility for benefits under SEPPA does not affect that worker's eligibility for workers' compensation benefits.
2. Homeland Security Act
The interplay between LE § 9-223 and the Homeland Security Act depends on the interpretation of an exclusivity provision in the federal law. The federal statute states that it provides an exclusive remedy "for any claim or suit [it] encompasses." 42 U.S.C. § 233(p)(3)(B). This raises a question as to whether the Homeland Security Act bars a workers' compensation claim by a public safety worker when the employer is a "covered person" for purposes of the Act.
The CDC has issued guidance for interpreting this provision of the Homeland Security Act. That guidance states that "[42 U.S.C. § 233(p)] does not bar workers' compensation claims in the way it bars other suits. Other statutes, e.g., the Federal Tort Claims Act, that create similar remedies and that exclude other claims have been interpreted as not excluding workers' compensation claims." CDC, Guidance for the Healthcare Community Concerning Section 304 of the Homeland Security Act (updated as of January 17, 2003)[12]; see also Makarova v. United States, 201 F.3d 110 (2d Cir. 2000) (because plaintiff was an employee of a federal entity, her remedy was under workers' compensation law, rather than Federal Tort Claims Act). According to the CDC's analysis of the Act, state workers' compensation laws determine the availability of a claim under the Homeland Security Act. For example, if a workers' compensation claim is the sole recourse under state law, and the injured individual would not have a claim against anyone else with respect to the injury, then there would be no claim under the federal law either. Id.
The Attorney General of New Hampshire has reached a similar conclusion. See Opinion of the New Hampshire Attorney General, Opinion No. 202812,2003 WL 1869617 (January 31, 2003). That opinion reasoned that, under New Hampshire tort law, an entity that would qualify as a "covered person" under the Homeland Security Act, could not be sued by an employee for a work-related injury; rather, the employee's sole remedy against the employer would be under New Hampshire's exclusive workers' compensation law. Accordingly, there would be no tort claim for which a similar claim against the federal government would be substituted under the Homeland Security Act. The employee would only have a claim under the Homeland Security Act if a third-party tortfeasor covered by the Act were liable for the injury.
In our opinion, Maryland law leads to the same conclusion. For example, if a law enforcement officer who participated in the federal program suffered an adverse reaction to a vaccination, the officer would have no tort claim under Maryland law against the officer's employing agency. Accordingly, the officer would have no claim against the federal government under the Homeland Security Act. (Of course, the officer would likely be entitled to compensation under SEPPA and the State workers' compensation law). If the officer were vaccinated at a hospital that fit the definition of "covered person," and the particular circumstances supported a tort claim against the hospital, then the Homeland Security Act would convert the officer's claim against the hospital into a claim against the federal government.
 IV Conclusion
It is our opinion that:
(1) Public safety personnel who are voluntarily vaccinated as part of the federal initiative and who suffer adverse reactions to their vaccinations will be eligible for benefits under SEPPA if they satisfy the other requirements of that statute. Benefits received under SEPPA are not based on fault, but will be reduced by the amount of any benefits received under the Maryland Workers' Compensation Act. To the extent that these personnel have claims against entities involved in the manufacture, distribution, or administration of the vaccine, they will be limited to asserting fault-based claims against the federal government under the Homeland Security Act of 2002, and any benefits will be offset by any compensation received under SEPPA.
(2) The two federal statutes also specifically provide for compensation of an individual who is infected and suffers an injury from contact with another individual vaccinated under the federal initiative. Thus, a Maryland public safety worker who is injured as a result of the vaccination of a co-worker will be eligible for compensation under federal law. Again, benefits under federal law will be offset to the extent the individual receives compensation under the State workers' compensation law.
(3) It is likely that the Workers' Compensation Commission or a reviewing court would hold that adverse reactions or complications experienced by a public safety worker arising from voluntary vaccination of the public safety worker or of a public safety coworker vaccinated as part of the federal program would qualify as an accidental injury or as an occupational disease under the Maryland Workers' Compensation Act.
J. Joseph Curran, Jr. Attorney General
E. Fremont Magee Assistant Attorney General
Robert N. McDonald Chief Counsel Opinions and Advice
[1] The pamphlet is available at: www.bt.cdc.gov/agent/smallpox/overview/disease-facts.asp.
[2] See www.whitehouse.gov/news/releases/2002/12/20021213-1.html.
[3] The declaration also has the effect of activating certain liability protections under federal law. See Part II of this opinion.
[4] See www.bt.cdc.gov/agent/smallpox/vaccination/facts.asp
[5] The relevant provisions of both laws are codified as part of the Public Health Services Act, 42 U.S.C. § 201 et seq.
[6] The quoted language is drawn from the statutory definition of "covered individual." 42 U.S.C. § 239(a)(2). Under SEPPA, a covered individual who sustains a "covered injury" qualifies as an "eligible individual." 42 U.S.C. § 239(a)(6)(A).
[7] Medical benefits include reimbursement for "medical items and services as reasonable and necessary" to treat the injury.42 U.S.C. § 239c(a).
Payments for lost wages are generally to be at the rate of two-thirds of normal pay, with increased payments for individuals with dependents.42 U.S.C. § 239d(b). Payments are limited to $50,000 per year, except in case of permanent and total disability. 42 U.S.C. § 239d(c)(3).
The death benefit payable to the individual's survivors is equal to the comparable benefit under the Public Safety Officers' Benefits Program — currently $262,000 — reduced by the amount of any payments for lost wages. 42 U.S.C. § 239e(a). See also United States Department of Health and Human Services News Release (March 5, 2003), available at www.hhs.gov/news/press/2003pres/20030305.html.
[8] The statute reads:
 (1) In general. For purposes of this section, and subject to other provisions of this subsection, a covered person shall be deemed to be an employee of the Public Health Service with respect to liability arising out of administration of a covered countermeasure against smallpox to an individual during the effective period of a declaration by the Secretary under paragraph (2)(A).
42 U.S.C. § 233(p)(1).
[9] The provisions governing the interplay of benefits available under SEPPA and the Homeland Security Act were enacted in 2003 as Section 3 of SEPPA.
[10] Attorneys General in several states have issued opinions concluding that public safety personnel who are voluntarily vaccinated under the national program would be covered by the state workers' compensation law. See Opinion of the Alabama Attorney General, Ala. Op. Atty. Gen. No. 2003-071, 2003 WL 295536 (February 3, 2003) (employees of hospitals, first responders, other health care providers and others who receive smallpox vaccinations as a countermeasure under the declaration of the Secretary of Health and Human Services are covered by workers compensation insurance); Opinion of the New Hampshire Attorney General, Opinion No. 202812, 2003 WL 1869617 (January 31, 2003) (workers' compensation coverage for employees considered emergency management workers' under New Hampshire law); Letter of Jeffrey S. Boyd, Texas Deputy Attorney General for Litigation (February 4, 2003) www.tdh.state.tx.us/stateepi/agleaerdoc (advising that workers' compensation law likely covers health care professionals who receive smallpox vaccine with employer's consent or at employer's request as part of their work related duties); see also Opinion of the Mississippi Attorney General, Opinion No. 2002-0549, 2002 WL 31663408 (September 18, 2002) (concluding that there is coverage for health care workers who volunteer to be front-line workers in case of smallpox outbreak if the employer determines pre-vaccinating employees is a necessary precaution to fulfilling that job responsibility).
In addition, agencies that administer workers' compensation programs in a number of states have indicated that an adverse reaction to a vaccination of public safety personnel under the national program will be covered by workers' compensation insurance. See Minnesota Department of Labor and Industry, Information about workers' compensation coverage for employees who receive smallpox vaccinations (2003), www.doli.state.mn.us/smallpox.html (workers' compensation law would apply to the extent that vaccinations are given to employees based on the nature of their employment); Vermont Department of Labor and Industry, Workers' Compensation Division, Frequently Asked Questions — Smallpox Vaccination Workers' Compensation (2003) www.state.vt.us/labind/wcomp/faqpox.htm (employee who suffers adverse reaction from a smallpox vaccination offered by employer is covered by workers' compensation law); Ohio Better Workers Compensation, Fact Sheet: Workers' Compensation Benefits for the Smallpox Vaccine (December 2002), www.ohiobwc.com/downloads/brochureware/factsheets/PoxFactsheet.pdf (indicating coverage for a serious or life-threatening reaction to smallpox vaccine); Kentucky Department of Workers' Claims, Bulletin: Workers' Compensation Coverage for Healthcare Workers Receiving Smallpox Vaccinations (January 24, 2003), labor.ky.gov/dwc/pdf-file-misc/bulletin1.pdf (vaccination of healthcare workers as encouraged in the Homeland Security Act benefits employer and, accordingly, workers' compensation coverage would apply); North Dakota Workers' Compensation, Press Release: ND Workers' Compensation will cover first responders who experience adverse reactions to smallpox vaccine during phase two of the national vaccination program (March 5, 2003) www.ndworkerscomp.com/about/gen_info/Press_Releases/SmallpoxVaccine.pdf (healthcare workers' and emergency responders' reactions to smallpox vaccine during phase two of the national program).
[11] In some respects, SEPPA is based on the federal statute at issue in Rose: the Public Safety Officer's Death Benefits Act ("PSOB"). 42 U.S.C. § 5796. Unlike the PSOB, SEPPA does not specify that benefits are supplemental in nature. However, it arguably is even clearer than the PSOB in declaring ineffective the offset provisions in State compensation statutes.
[12] www.bt.cdc.gov/agent/smallpox/vaccination/ healthcare-304-guidance.asp *Page 136